**Jack W. McRAE, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 21980.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 17, 1969.

Decided June 10, 1969.

Petition for Rehearing Denied
Nov. 18, 1969.

Prettyman, Senior Circuit Judge,
dissented.

———◆———

Mr. Stephen A. Trimble, Washington,
D. C. (appointed by this court) for appellant.

Mr. Robert A. Ackerman, Asst. U. S.
Atty., with whom Messrs. David G.
Bress, U. S. Atty., at the time the brief
was filed, and Frank Q. Nebeker, Asst.

U. S. Atty., at the time the brief was filed, were on the brief, for appellee.

Before BAZELON, Chief Judge, PRETTYMAN, Senior Circuit Judge, and ROBINSON, Circuit Judge.

BAZELON, Chief Judge.

The appellant advances a spate of reasons why his conviction for rape and assault with a dangerous weapon should be reversed. We agree with his contention that the trial judge erred under the circumstances in re-examining the pretrial decision by a different district judge to grant the defendant's motion to suppress various items of physical evidence seized at and after the time of his arrest. We also find that the out-of-court confrontation between the appellant and his alleged victim was unnecessarily suggestive. The present record does not permit a determination whether an independent source exists for either the out-of-court or in-court identifications; we consequently leave those issues for resolution at a new trial.

I

Mrs. Emma Allen, a divorced mother of seven, testified that a young man knocked at her door about ten o'clock one evening in March 1967 and asked for her son Gregory. When told he was not at home, the visitor said he had come for a pair of football cleats he had lent Gregory. Mrs. Allen, leaving the front door open, went to the basement to look for the shoes. Moments later, the young man burst down the stairs exclaiming that he didn't want any shoes, he wanted her. After forcing Mrs. Allen into a closet where she momentarily fought him off, he raped her upon two couch cushions placed on the basement floor. When she attempted to scream, her assailant slashed her face with a knife. The deed completed, he led his victim upstairs at knifepoint and left by the front door.

Shortly thereafter, two other friends of Gregory came to the door asking for him. When Mrs. Allen told them she had been attacked, they left to find her son.

She waited about an hour, then concluded their search was unsuccessful and set off for the hospital herself, leaving a note for Gregory. A cab driver saw her crying on the street corner and, although she had no money, took her to the hospital emergency room. She told a police officer there what had happened, and shortly her son appeared at the hospital. Mrs. Allen told him that one of his friends had raped her. Gregory told the police that he could not recall the friend's name, but only one boy approximating his mother's description would have known of the football cleats. Since he knew the house where this individual lived but not the address, Gregory set off with the police to apprehend the suspect. They first went to the home of the appellant's father, who told the police his son no longer lived there but gave them another address. When the police went to the door there—Gregory remaining in the squad car—a young child of about 11 answered their knock. The police announced their identity, and asked if Jack McRae was at home (having learned their suspect's name from his father). The child said nothing, but pointed to a man sleeping in a chair at the other side of the small room. The police entered and arrested him, seizing at the time a knife lying on the arm of the chair.

The police officers then drove to the hospital to allow Gregory to rejoin his mother and to see if she could identify McRae. Mrs. Allen walked out from the emergency room and looked into the back seat of the squad car where the appellant, a Negro, was seated beside a white police officer. She identified McRae, and the police then took him to the police station. Several hours later, at about five in the morning, the police took the appellant's clothing for examination, as well as head and pubic hair samples. At ten the next morning, McRae was presented to a committing magistrate.

His attorney moved before trial for suppression of the physical and identification evidence. At a hearing before Judge Jones on November 3 at which

the arresting officer testified, the defense counsel argued that the police had not announced their identity and purpose before entering McRae's apartment. In addition, counsel argued that the confrontation in the police cruiser outside the hospital was unnecessarily suggestive and that the police had violated Rule 5(a) of the Federal Rules of Criminal Procedure by not presenting McRae to a committing magistrate until the morning following his arrest.

Judge Jones declined to rule upon the identification issue, preferring instead to leave that question for resolution at trial. He did, however, suppress the physical evidence seized at the time of the arrest and at the police station, granting leave to the Government to file a memorandum requesting reconsideration. On November 9 the Government filed an eleven-line memorandum arguing that "the validity of the arrest and search must be sustained when determined by reasonableness in the light of the circumstances of this particular case." The defense filed a memorandum in reply on November 15 which distinguished the single case cited by the Government, Washington v. United States, 105 U.S.App.D.C. 58, 263 F.2d 742 (1959), as one approving a peaceable entry.

Judge Jones entered another order on November 21 again suppressing the physical evidence, and denied a new motion for reconsideration by the Government on February 9, 1968. When the trial began on February 12 before Judge Matthews, however, the Government again attacked Judge Jones' decision to suppress the physical evidence, asserting that the record was insufficient for the trial court to determine whether there had been substantial compliance with the requirement of announcement of author-

ity and purpose and whether the safety of the arresting officers justified partial noncompliance. Judge Matthews concluded that further testimony was necessary, and at the completion of a fresh hearing ruled that the knife, clothing and hair samples would be admissible. At the same time she concluded that the hospital confrontation was not prejudicially suggestive and denied a motion by the defense for an in-court lineup.

II

The appellant argues that since the Government could not appeal directly from Judge Jones' order before trial suppressing the physical evidence seized in his apartment and at the police station, *see* Carroll v. United States, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957),[1] it should not be able to achieve the same result indirectly by requesting the trial judge to re-examine the pretrial ruling. There is, we agree, a certain functional similarity between appellate review and re-examination by another judge of the same court. But the differences between appellate review and reappraisal of a pretrial ruling at trial refute this functional analysis. Judge Matthews did not determine, as would an appellate court, whether Judge Jones committed an error of law or made a clearly erroneous finding of fact. Her purpose in hearing further testimony upon the suppression issue was rather to make a de novo determination, which she concluded her responsibilities as trial judge required since "the basis of Judge Jones' ruling is not clear to me."

Moreover, the argument that re-examination at trial should be barred because it achieves the same result as appellate review proves too much. For while the Government cannot appeal directly from a ruling upon a pretrial motion to sup-

---

1. Since trial occurred four months before the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 197, was enacted, we do not consider the provisions of Section 1301(a) of that act, which amends 18 U.S.C. § 3731 (1964) to permit an interlocutory appeal from a District Court order "granting * * * a motion to suppress evidence * * * if the United States attorney certifies to the judge who granted such motion that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of the charge pending against the defendant."

press, neither can the defendant. Cogen v. United States, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275 (1929). But the law is clear that the defendant can in some circumstances secure a fresh determination at trial concerning the admissibility of seized evidence after a denial of his pretrial motion to suppress. *See* Gouled v. United States, 255 U.S. 298, 312–313, 41 S.Ct. 261, 65 L.Ed. 647 (1921); Rouse v. United States, 123 U.S.App.D. C. 348, 349–350, 359 F.2d 1014, 1015 (1966); Anderson v. United States, 122 U.S.App.D.C. 277, 279, 352 F.2d 945, 947 (1965).

■ The appellant also argues that the Government was collaterally estopped from relitigating the suppression issue after Judge Jones had made a pretrial ruling. This reasoning would also lead too far, since no reason is suggested why the defendant in a criminal case would not also be collaterally estopped from challenging evidence at trial after the denial of a pretrial suppression motion. But the defendant can raise such a challenge without encountering problems of res judicata or collateral estoppel, since these doctrines come into play only when there has been a final adjudication in a separate proceeding. *See, e. g.,* Moore v. United States, 120 U.S.App.D.C. 173, 174, 344 F.2d 558, 559 (1965). Here, unlike such cases as Steele v. United States No. 2, 267 U.S. 505, 45 S.Ct. 417, 69 L.Ed. 761 (1925), and Laughlin v. United States, 120 U.S. App.D.C. 93, 344 F.2d 187 (1965), there was no separate prosecution or lawsuit. The order suppressing the evidence seized was granted at a preliminary stage of the same criminal case, and it would beg the question to conclude that this was a final decision binding upon the government. Consequently, we derive no guidance in the doctrine of collateral estoppel.

Neither, however, can we find guidance in prior decisions by this or other federal courts of appeals dealing with the specific question presented. Attention has been paid to the problem of whether a defendant may or must renew a motion to suppress at trial after a pretrial denial, and whether either the Government or the defendant may appeal directly from a pretrial ruling upon a motion to suppress. But neither the appellant nor the Government cites any cases discussing the circumstances if any under which the Government may request re-examination at trial of a pretrial order suppressing evidence, and our labors have discovered no federal decision on this precise point.[2]

The superficially attractive solution to the problem is the appeal to symmetry: since the defendant may renew his motion to suppress at trial, the Government should be allowed to renew its objection to an order suppressing evidence. The criminal law, however, has never meted out rights and duties to prosecutors and defendants in equal measure. Because of our well-justified aversion to sending an innocent man to jail, the Government bears the onerous responsibility of proving guilt beyond a reasonable doubt. And because of the popular feeling that a man acquitted at trial should not face the anguish of further proceedings, "appeals by the Government in criminal cases are something unusual, exceptional, not favored," Carroll v. United States, 354 U.S. 394, 400, 77 S.Ct. 1332, 1336 (1957).

The argument from symmetry, therefore, cannot be uncritically accepted. To determine whether the Government should be allowed to reopen the issue of suppression at trial, we must examine

---

2. In an opinion concluding that the Government could not appeal from a pretrial suppression order issued by a different district court than that where the trial was to be held, the Fifth Circuit Court of Appeals assumed arguendo that the suppression ruling would not be binding upon the trial judge "if in the exercise of sound discretion he should decide that exceptional circumstances require the admission of the evidence." United States v. Koenig, 290 F.2d 166, 173–174 (5th Cir. 1961), aff'd *sub nom.* Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962).

the reasons why this privilege is sometimes accorded the defendant and whether the same considerations apply when the Government is the movant.

### III

Two related considerations require flexibility in the application of the long-standing requirement now codified in Rule 41(e) that the defendant move to suppress evidence before trial.[3] The first springs from the defendant's scanty knowledge of the actions of the police and their justification. Rule 41(e) acknowledges this fact by excepting cases where "the defendant was not aware of the grounds for the motion." To bar the defendant from challenging unconstitutionally seized evidence at trial in these circumstances would, as the Supreme Court has recognized, exalt a rule of procedure over a constitutional right. *See* Gouled v. United States, 255 U.S. 298, 312–313, 41 S.Ct. 261 (1921).

■ In the second place, even if the defendant raises the issue before trial, "the legality of the search too often cannot truly be determined until the evidence at the trial has brought all circumstances to light." DiBella v. United States, 369 U.S. 121, 129, 82 S.Ct. 654, 659 (1962). Although Rule 41(e) requires the court to "receive evidence on any issue of fact necessary to the determination of the [pretrial] motion," the common procedure at this stage—apparently approved by the Supreme Court— "is to decide the question on affidavits alone." *Id.* at 129, 82 S.Ct. at 659 n. 9; *see also* Lawn v. United States, 355 U.S. 339, 353–354, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958). While this course may expedite proceedings, an abbreviated hearing should not foreclose the defendant from again challenging the admissibility of evidence if "new facts, new light on

the credibility of government witnesses, or other matters appearing at trial * * cast reasonable doubt on the pretrial ruling." Rouse v. United States, 123 U.S.App.D.C. 348, 350, 359 F.2d 1014, 1016 (1966).

Neither of these considerations apply to the Government. When a pretrial motion is made for the suppression of evidence, the Government normally has access to the information necessary to justify the conduct of the police. Nor, when a pretrial order has suppressed evidence, are new facts likely to appear at trial that cast doubt upon the ruling. When the pretrial motion has been denied, the challenged evidence will usually be admitted into evidence at trial. Government witnesses will be called as part of the prosecutor's case in chief to testify how they obtained the evidence and will be subject to cross-examination. Their testimony may reveal added details concerning the search or seizure. But when evidence is suppressed by a pretrial order, there will be no testimony concerning the circumstances of seizure unless the Government can secure, as it did here, a separate hearing on the issue.

Finally, it would blink reality to ignore the disparate position of the state and the accused before trial. While the need for efficient justice may require a procedural rule that motions to suppress evidence be made before trial, the fact that many appointed lawyers may be unskilled in criminal procedure and our reluctance to penalize defendants for their attorney's lack of diligence or experience must influence our response when the requirement is not met. The Government, on the other hand, has a far smaller claim to judicial solicitude, particularly when the issue has been raised by a timely pretrial motion to suppress.

---

3. Rule 41(e) of the Rules of Criminal Procedure provides in relevant part

    * * * The motion [to suppress evidence] shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may en-

tertain the motion at the trial or hearing.

The requirement of Rule 41(e) that a motion for suppression be made before trial represents "a restatement of [previous] * * * law and practice * * *." Notes of Advisory Committee on Rules, 18 U.S.C., Rule 41 (1964).

Rule 41(e) attempts to promote judicial efficiency by insuring that trials will not be interrupted or delayed by tangential inquiries into the propriety of police conduct. To allow the loser at a pretrial suppression hearing to demand a de novo determination at trial as a matter of course would defeat this purpose. Since the Government is more able than the defendant to insure a full and fair resolution of any issue encompassed by Rule 41(e) at a pretrial proceeding, there is commensurately less reason to allow the prosecutor to request a reappraisal of a suppression order.

## IV

In this case, the trial judge felt that she was unable to discern the basis for Judge Jones' order and subsequent denials of the Government's motions for reconsideration. There was at the time trial began no transcript available of the arguments by counsel before Judge Jones. But testimony at the suppression hearing was transcribed, and clearly revealed that the defense objected to the failure of the arresting officers to announce their identity and purpose before entering McRae's apartment. In addition, both the prosecutor and the appellant's attorney agreed when the issue was raised before the trial judge that the propriety of the seizure hinged upon whether the police had complied with 18 U.S.C. § 3109 (1964),[4] or whether any departure from its requirements was justified by the circumstances.

The trial judge was commendably aware of her responsibility to determine the admissibility of evidence. But the Government should not be allowed to undercut the aims of Rule 41(e) simply because the basis for a pretrial suppression order has not been laid bare in a detailed opinion. The issue raised was clear, and equally clear was the fact that

a hearing had been held and a considered ruling made. Judge Jones had granted the Government leave to move for reconsideration and then denied that motion, as well as a second motion made immediately before trial. He had declined to rule upon the identification issue; the clarity of that refusal to adjudicate further fuels the conclusion that his decision to suppress the physical evidence was firm and final.

In these circumstances we think the Government was obligated to advance stronger justification for relitigating the issue at trial. The parties disagree whether the arresting officer changed his testimony at the second suppression hearing or whether he merely elaborated upon his previous narration. At the hearing on November 3, 1967, Officer McCafrey stated, "We walked over to wake him up. Before I woke him up, I noticed a knife of some type was sitting by his right hand on the arm of the chair. I took the knife first and then woke him up." At the second hearing, on February 12, 1968 McCafrey testified that he saw the knife from the doorway *before* he entered the apartment, and that he entered without further announcing his purpose—to arrest McRae —because he wished to seize the knife lying at the appellant's elbow before awakening him.

We do not find it necessary to decide whether the officer's statement on November 3 did or did not imply that he saw the knife only after entering the apartment. In deciding whether a second suppression hearing was proper, we must scrutinize not the events at that hearing, but the justification advanced by the Government to reopen the issue.

On this score, the prosecutor told the trial judge that he wished to elicit further testimony from Officer McCafrey

---

4. 18 U.S.C. § 3109 provides

The officer may break open any outer or inner door or window of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or

a person aiding him in the execution of the warrant.

These requirements apply as well to a police officer entering a dwelling without a warrant to effect an arrest. Miller v. United States, 357 U.S. 301, 306, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).

to show that the police had substantially announced their purpose by asking if McRae was at home or, alternatively, that the "safety of the officers" required noncompliance with 18 U.S.C. § 3109 (1964). But the transcript of the first hearing clearly revealed the announcement, such as it was, made by the police. There were no new facts to develop on this score, nor did the Government suggest that there were; rather, the prosecutor was in effect simply requesting the trial judge to make a fresh ruling as to whether the undisputed facts represented substantial compliance.

As for the safety of the officers, if the Government had no new theory of the facts to develop through testimony, here also it was requesting only another ruling as to the legal consequences attaching to the facts testified to at the first hearing. If, on the other hand, the Government wished to develop new facts through either an elaboration of or change in the testimony of the officer who had already testified, we feel that the prosecutor bore some responsibility to suggest to the Court why these facts had not been elicited at the first hearing.

There was a second officer present when McRae was arrested. He testified at neither hearing, however, and the Government never undertook to explain why he was not called. The situation might be different if the Government had requested a second hearing on the ground that this second officer, although unavailable or unknown at the time of the first hearing for some good reason, was now able to testify and could present a more detailed narration of the circumstances surrounding the arrest than could Officer McCafrey.[5]

But here the Government merely proposed, at best, to allow Officer McCafrey to elaborate upon his earlier testimony, without the slightest explanation why elaboration was necessary. We

assume the fullest good faith on the part of all parties. But the Government should not be permitted as a matter of course to present the same witness to a second judge in the hopes that a differently phrased narration of the relevant circumstances will lead to a different ruling. Tolerance of this practice would do nothing to encourage the Government to insure that all the evidence is thoroughly aired before trial as Rule 41(e) intends.

■ We hold, accordingly, that relitigation of the suppression order issued before trial was improper in this case. Consequently, the admission of the physical evidence suppressed by Judge Jones was erroneous, and the conviction must be reversed. In reaching this result we do not attempt to establish detailed standards governing when, if ever, the Government may request a new hearing before the trial judge.

V

■ The appellant also contends that the trial court erred in admitting evidence relating to his out-of-court confrontation with Mrs. Allen. Since the events in question occurred before the Supreme Court decision in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), we must apply the standard of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), to determine whether the confrontation outside the hospital was "so unnecessarily suggestive and conducive to irreparable mistake that he was denied due process of law," *id.* at 302, 87 S.Ct. at 1972.

After the police arrested McRae, they drove immediately to the hospital to see if Mrs. Allen could identify their suspect. She was able to walk from the emergency room to the police cruiser, where she looked into the back seat through a closed window. The appellant was seated beside a white police officer;

---

5. The prosecutor did proffer the testimony of Officer Pratt when requesting the trial judge to hold a suppression hearing. His testimony, however, related only to the circumstances of the identification, and not to the entry into the appellant's apartment.

Mrs. Allen identified McRae as the man who had attacked her. The rape had occurred between 10 and 11 p. m.; it was then slightly after 2:40 a. m., almost four hours later.

Both the Supreme Court and this court had condemned the practice of exhibiting a lone suspect to a witness for identification. *See* Stovall v. Denno, *supra;* Clemons v. United States, 133 U.S. App.D.C. 27, 408 F.2d 1230 (December 8, 1968). In some circumstances such confrontations cannot be avoided. The victim in *Stovall*, for example, was gravely injured and the police reasonably feared that she might die before a line-up could be arranged. But .there is no evidence in this case that Mrs. Allen was likely to die, nor even that her condition would prevent her from attending a prompt line-up. Indeed, one of the arresting officers testified that the police made no effort to ascertain her condition before driving McRae to the hospital.

The court has also recognized that the desirability of a prompt identification may outweigh the dangers of a one-to-one confrontation. The Government argues that the rationale of Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206, cert. denied, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1966) and its progeny applies here. We cannot agree. In *Wise* the complainant had surprised an intruder in his home, given chase when he ran out the door, and caught up with him having never lost sight of the suspect. The time between the offense and the identification was almost nugatory. In Walker v. United States, No. 20,309 (June 17, 1968) (unreported), we applied *Wise* to a situation where the appellant was arrested "within ten minutes of the robbery only a few blocks away" and the complaining witness was brought to the scene "within minutes" to identify him. The appellant in Bates v. United States, 132 U.S. App.D.C. 36, 405 F.2d 1104 (1968) was also apprehended a short distance from the scene; we approved an identification made "at most 30 minutes after the attack." [6] The police arrested the appellant in Young v. United States, 132 U.S. App.D.C. 257, 407 F.2d 720 (January 24, 1969) "a few minutes" after the robbery and "took him straight to * * * [the victim], who made a positive identification * * *." On the same day that Young was decided, we approved another "prompt on-the-scene confrontation" occurring "within minutes of the witnessed crime" in Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280 (January 24, 1969). Finally, in Stewart v. United States, 135 U.S.App.D.C. 274, 418 F.2d 1110 (February 10, 1969), we affirmed a conviction where the crucial confrontation took place "only minutes after * * * [the victim] last saw the man carrying the loot, and about two hours after the crime."

The circumstances of this case scarcely square with the doctrine developed in these decisions. The confrontation at the hospital occurred almost four hours after the rape. At some point the nexus of time and place between offense and identification must become too attenuated to outweigh the admitted dangers of presenting suspects singly to witnesses. We conclude that this point was reached, and more, in this case.

Our finding that the *Wise* doctrine does not encompass the facts of

6. The court in *Bates* refers to our approval of the two confrontations in McDonald v. United States, No. 21,872 (Dec. 4, 1968) (unreported) as indicative of our recognition of "the propriety of early identifications." 132 U.S.App.D.C. 36 at 38; 405 F.2d at 1106 n. 4. That decision applied the *Wise* doctrine only to the "curbside confrontation" which occurred "shortly after the offense. * * *" The confrontation between the appellant and the second victim, which took place two hours after the offense in a hospital emergency room, the court found "may have been unnecessarily suggestive." The conviction was affirmed because "the bizarre circumstances of this case preclude any substantial possibility of misidentification. The victim had struggled with her assailant for more than 20 minutes and had, in the process, bitten him, beaten him, and shot him in the left ear."

this case does not end our inquiry, however. The fact that the confrontation at the hospital was unnecessarily suggestive does not automatically imply that it was so conducive to irreparable mistaken identification that the appellant was denied due process. The recent en banc decision of this court in Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (December 8, 1968) has clarified the principles governing this determination. Although a hearing was held before trial in this case to determine the admissibility of identification evidence, it proceeded without the guidance provided by Clemons. Accordingly, we conclude that this issue is best left for resolution at a new trial, since the record does not permit answers to all the questions suggested by *Clemons.* For example, Mrs. Allen gave a description of her attacker to the police before identifying the appellant at the hospital. Although this description does not match or even approximate the appellant's height or weight, some features of her description caused Mrs. Allen's son Gregory to lead the police to the appellant's home. The record does not permit us to determine in what respects other than height or weight her description does or does not apply to the appellant. Since this factor may be important, the district court is better suited to determine whether there was an independent source supporting the probable reliability of the hospital confrontation that we have found unnecessarily suggestive.

Reversed and remanded for a new trial.

PRETTYMAN, Senior Circuit Judge, (dissenting):

*I*

Judge Matthews, the trial judge, was presented with questions she was required to decide, *i. e.,* the suppression of

evidence as to identification and as to alleged illegal detention, which questions had not been before Judge Jones. Also the Government proffered a witness not presented to Judge Jones. And moreover the trial judge could not ascertain from the record given her precisely what Judge Jones's ruling had been as to the legality of the arrest. Therefore she correctly took testimony and ruled upon the problems before her.[1] I add that the extended consideration the court devotes to the right of the Government to renew a motion to supress is beside the point in this case.

*II*

In my opinion the circumstance of the football cleats puts the identification feature of the case beyond dispute. The victim in this rape had a son named Gregory. On the day of the relevant events a young man appeared at the front door of her home and said he had come for a pair of football cleats he had loaned Gregory. She went to the basement to get the cleats. She says the young man followed her and raped her. She called the police, telling them of the affair, including the reference to the cleats. Gregory, when questioned, said he knew who that friend was and gave the police a name and address. On sight the victim of the rape identified him. That chain of circumstances nullifies the possibility of misidentification, or at least puts the matter outside the curative effects of confrontation and line-ups.

Identifications are frequently—indeed usually—established by human observation and recollection, without the aid of a notable feature or fact. Such processes are liable to grievous mistakes and, conversely, to suggestion, intentional or otherwise. The Supreme Court took note of that possibility and framed a series of cases to meet it. Among these cases are United States v. Wade,[2]

1. See Rouse v. United States, 123 U.S. App.D.C. 348, 359 F.2d 1014 (D.C. Cir. 1966).

2. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967).

Gilbert v. California,[3] Stovall v. Denno,[4] and Simmons v. United States.[5] The crux of these cases is some action "conducive to irreparable mistaken identification".[6] But identifications are also frequently solidified by extrinsic aids. A suspect may have a peculiar scar, or a fantastic tattoo, or a notable deformity. The whole art and science of codes, passwords, fingerprints, and identifying phrases revolve about such circumstances. In such cases additional aids are unnecessary. The litanies of confrontations and line-ups prescribed by the cited Supreme Court cases do not apply. They are not only unnecessary but useless, or at best cumulative. If a suspect is described to the police as having one eye, a hairlip, and a four-inch scar on his cheek, a line-up or a confrontation serves no purpose beyond cumulation.

Such is the present case, as I see it. McRae was not picked up or held by reason of Mrs. Allen's description of his weight, size, color, or other characteristics, or her memory of his looks. He was arrested and accused upon a combination of two circumstances—(1) his own assertion that he loaned Gregory a pair of cleats and (2) Gregory's assertion that he (McRae) was the one who loaned the cleats. I think the court errs when it tries to squeeze a case like this into the mold of *Wade, Stovall* and *Simmons*; they deal with a different subject. I think it errs when it reverses in order to add to a record items of evidence or procedure which will be entirely cumulative of what is already there.

Whether this young man committed the rape is another matter. And so too is the question whether the occurrence was a rape. But the identification is certain; this is the young man the woman says raped her.

---

3. 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 2d 1178 (1967).

4. 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

5. 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

6. Stovall v. Denno, *supra* note 4, at 301–302, 87 S.Ct. at 1972; and Simmons v. United States, *supra* note 5, at 384, 88 S.Ct. 967.