**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael RABB, Defendant-Appellant.**

**No. 83–1081.**

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 10, 1984.*

Decided Nov. 19, 1984.

* The panel is unanimously of the opinion that oral argument is not required in this case. Fed.  R.App.P. 34(a).

Eric Swenson, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Roderick P. Bushnell, San Francisco, Cal., for defendant-appellant.

Before WALLACE, ALARCON, and NELSON, Circuit Judges.

WALLACE, Circuit Judge:

Rabb appeals from his convictions under 18 U.S.C. §§ 371, 2113(a), and 2113(a), (d) for one count of conspiracy to commit armed and unarmed bank robbery, and four counts of armed and unarmed bank robbery. Four of Rabb's codefendants pled guilty and did not appeal. A fifth codefendant was severed for a separate trial. The district court sentenced Rabb to five years for the conspiracy offense, and fifteen years for each robbery offense. This court has jurisdiction under 28 U.S.C. § 1291. We affirm in part and vacate and remand in part.

I

On June 16, 1982, Rabb was assigned to the supervision of California Parole Officer Northrup. In late September 1982, Northrup began to have difficulty contacting Rabb, who had missed several narcotics testing appointments. Northrup became concerned that Rabb was no longer living with his mother at his registered address. Northrup became increasingly suspicious of Rabb's activities when Northrup learned that Rabb's mother's automobile had been identified as the vehicle used in a recent bank robbery.

On September 13th, October 11th, October 19th, and October 27th, 1982, five bank robberies occurred in the San Francisco Bay area. FBI agent Holmquist investigated the robberies and began to suspect Rabb's complicity. On November 2, 1982, Holmquist requested Northrup to provide Rabb's registered address. Northrup complied with this request. On November 3, 1982, Holmquist advised Northrup that Rabb was living at the Franciscan Motel, in violation of condition two of his parole. In order to verify this change of address, Northrup asked Holmquist to accompany him to the motel. On November 4, the two officers, accompanied by other FBI agents, went to the motel, where the manager identified Rabb as a resident after viewing a photograph of him.

Northrup and Holmquist entered Rabb's room, found Rabb and codefendant Pollard, and arrested Rabb for violating his parole. Northrup searched the room and found Rabb's clothing, indicating his residence, and narcotics paraphernalia. During Rabb's apprehension, Holmquist observed needle marks on Rabb's arms and saw a white sailor hat on the bed similar to the hat worn by one of the robbers in the September 13th robbery. After the arrest, Northrup searched Rabb's room at his registered address with the FBI's assistance. On November 5th, Northrup searched the garage at this address. Both searches uncovered evidence linking Rabb to the robberies and narcotics paraphernalia.

## II

Sixteen days before trial, Rabb successfully moved to suppress the evidence obtained during his arrest at the motel and during the searches of his mother's home and garage. Six days before trial, the district court denied the government's motion to reconsider the suppression order, and the government announced its intention to have Holmquist testify about his observations of needle marks and the sailor hat. The government acknowledged the suppression order, but argued that testimony about the needle marks and hat was admissible because the evidence was in plain view during a valid arrest. The government did not advance this argument at the suppression hearing. The next day Rabb filed a motion *in limine* to exclude this testimony. Three days later, the government responded to Rabb's motion. The following day, the court began the trial, completing both the selection and swearing in of the jury. The next day the court held a hearing on the motion *in limine*, after which it denied Rabb's motion. The trial recommenced the next morning. Rabb argues that once the evidence was suppressed, any testimony regarding it cannot be admitted at trial merely because the government asserts a new theory.

Although the motion acted upon by the district judge was a motion *in limine* by Rabb, it was in essence a reconsideration of the earlier grant of Rabb's motion to suppress. The same subject matter was involved—only the legal argument had changed. We have approved of the judicial economy that results from the pretrial reconsideration of suppression orders by the district court. *See United States v. Jones*, 608 F.2d 386, 390 n. 2 (9th Cir.1979). This case is different because the trial had commenced before the hearing and ruling upon Rabb's motion. The extent to which a district court may review the pretrial suppression of evidence during trial is a question of first impression in this circuit. In *McRae v. United States*, 420 F.2d 1283 (D.C.Cir.1969) (*McRae*), a motion to suppress was granted in a case that later resulted in a mistrial. The government moved to reopen the issue when the case was assigned to a new judge. After a new hearing, the district judge admitted the previously suppressed evidence. The District of Columbia Circuit held that relitigation of a suppression order issued before trial on motion of the government should not be permitted as a matter of course; some justification, such as new evidence, would be required. *Id.* at 1288–89. The court rejected the argument that the defendant's ability to relitigate denials of motions to suppress presupposed that the government had the same right, *id.* at 1286–87, in part

because of the government's greater access to evidence before trial. *Id.* at 1287.

In *United States v. Regilio,* 669 F.2d 1169 (7th Cir.1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982) (*Regilio* ), the Seventh Circuit arrived at a different conclusion. The court upheld the district court's reconsideration and reversal of its suppression order after a mistrial. *Id.* at 1177. The court stated that "[t]he defendant is entitled to have evidence suppressed only if it was obtained unconstitutionally. If matters appearing later indicate that no constitutional violation occurred, society's interest in admitting all relevant evidence militates strongly in favor of permitting reconsideration." *Id.* (citations omitted). The court relied upon a line of cases in the Fifth Circuit which has consistently upheld the propriety of a district court's reconsideration of a suppression order. *See, e.g., United States v. Scott,* 524 F.2d 465, 467 (5th Cir.1975) (trial court is free to reconsider suppression order; 18. U.S.C. § 3731 is not exclusive method for prosecutor to seek review of order) (*Scott* ); *United States v. Harris,* 479 F.2d 508 (5th Cir.1973) (reconsideration of suppression order following mistrial).

*Regilio* and *Scott* espouse the sounder approach. The Supreme Court has emphasized repeatedly that the primary function of the exclusionary rule is to deter law enforcement officials from future unlawful conduct. *See, e.g., United States v. Leon,* — U.S. ——, 104 S.Ct. 3405, 3419–20, 82 L.Ed.2d 677 (1984); *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). A criminal defendant acquires no personal right of redress in suppressed evidence. *See United States v. Calandra,* 414 U.S. at 347–48, 94 S.Ct. at 619–20. Moreover, the Fifth and Seventh Circuit approach enables a district court to correct its own errors without the use of appellate resources.

■ We review the district court's decision to reconsider a suppression order at trial for an abuse of discretion. *Cf. United States v. Layton,* 720 F.2d 548, 553 (9th Cir.1983) (decisions to hear pretrial motions before trial or at trial reviewed for abuse of discretion), *cert. denied,* — U.S. ——, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984). The government proffered a new theory under which the evidence could be admitted, without offering any new facts. We reject *McRae*'s "justification" requirement and adopt the Fifth and Seventh Circuits' position: if the record reveals matters which indicate that the evidence was lawfully obtained, the district court may reconsider its suppression order at trial. There is no indication in this record of purposeful delay by the government or prejudice to Rabb. In this case, the district court did not abuse its discretion by reconsidering its suppression order.

■ The next issue is whether the needle marks and sailor hat were admissible as evidence in plain view incident to a valid arrest. In *Latta v. Fitzharris,* 521 F.2d 246 (9th Cir.) (en banc), *cert. denied,* 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975) (*Latta* ), we adopted a reasonableness test for searches and seizures of parolees. Latta's parole officer arrested him for violations of his parole. After the arrest, the parole officer and two police officers searched Latta's home and found marijuana. Latta was convicted for possession of marijuana with intent to distribute. We upheld the search despite the absence of probable cause, concluding that a search by a parole officer is valid if he reasonably believes that it "is necessary in the performance of his duties." *Id.* at 250. The reasonableness of the search depends on a balancing of the parolee's privacy interest, which is less than that of the ordinary citizen, and the need to protect the public. *Id.*

The facts of this case are similar to those in *United States v. Dally,* 606 F.2d 861 (9th Cir.1979) (*Dally* ). Dally's boyfriend, a parolee, could not be located at his registered address. The police notified the parole officer that the parolee had moved. A parole investigator and a federal agent investigated the change of address, confirmed it, and arrested the boyfriend. *Id.* at 862. The officers searched the new resi-

dence and found contraband. *Id.* We concluded that the search was reasonable because the "known facts [of the parole violation] provided a reasonable basis for the search." *Id.* at 863.

■ The validity of the searches of the motel room, house, and garage are not before us because the suppression order was not appealed. We only need to decide if Rabb's arrest was valid and if the evidence was admissible under the plain view doctrine. These are mixed questions of law and fact reviewable de novo. *See United States v. McConney,* 728 F.2d 1195, 1199–1204 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ In neither *Dally* nor *Latta* did the parolees challenge the validity of their arrests. In *Latta,* however, we indicated that searches of parolees do not require probable cause. The same analytical framework under which such searches are considered controls the disposition of Rabb's claim that probable cause is required for a parolee arrest. We have stated that parole may be revoked on a variety of grounds, many of which would not suffice for the arrest of a non-parolee. *See Latta,* 521 F.2d at 249 ("parole is subject to revocation for reasons that would not permit the arrest and incarceration of other persons"). A parolee, while free of the prison walls, still remains under legal custody. We agree with the California court's characterization of a parolee arrest as being more like "a mere transfer of the subject from constructive custody into actual or physical custody," rather than like an arrest of a private individual who is the suspect of a crime. *People v. Villareal,* 262 Cal.App.2d 438, 447, 68 Cal.Rptr. 610, 616 (Dist.Ct.App.1968) (arrest of parolee for parole violation does not require probable cause). We conclude that if a parole officer reasonably believes a parolee is in violation of his parole, the officer may arrest the parolee.

■ In this case, Northrup was alerted to possible parole violations as early as September 2, 1982. Holmquist advised him of a probable address change on November 3, 1982. If a parole officer receives information from law enforcement officers that a parolee is in violation of his parole, the parole officer may investigate the violation. *See Dally,* 606 F.2d at 862–63; *Latta,* 521 F.2d at 253 (Wright, J., concurring). Northrup determined that Rabb was living at the motel after the manager identified him from a photograph. Thus, Northrup established a parole violation and was entitled to take Rabb into custody. Under the *Latta* analysis, once a violation is established, the public interest in apprehending parole violators outweighs the parolee's privacy interest. We hold that the arrest was valid.

■ The plain view doctrine of *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), permits officers to seize incriminating evidence in plain view pursuant to a valid arrest. Here, the parties do not dispute that the needle marks and sailor hat were plainly visible. Holmquist recognized the needle marks as those left by narcotics injections, and identified the sailor hat as similar to a hat worn by one of the bank robbers. Thus, the government established the requisite nexus between the evidence and criminal behavior. *See United States v. Wright,* 667 F.2d 793, 797 (9th Cir.1982). We conclude that testimony about the needle marks and sailor hat was properly admitted.

## III

■ Except for Rabb's last challenge, we find his remaining arguments lack merit. Rabb asserts that the district court violated his fifth and sixth amendment rights to an impartial jury trial by permitting the prosecution to exercise a peremptory challenge against the only black venireman. We review the prosecution's exercise of a peremptory challenge de novo. *See Weathersby v. Morris,* 708 F.2d 1493 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984). In *Swain v. Alabama,* 380 U.S. 202, 222, 85 S.Ct. 824, 837, 13 L.Ed.2d 759 (1965), the

Supreme Court held that the prosecutor's motives for excluding black jurors by peremptory challenge are presumed acceptable. We are bound by that presumption. Unlike *Weathersby*, this is not a case in which the prosecutor voluntarily placed his reasons for the challenge on the record. The district court asked the prosecutor to state his reasons. This was improper. The district court should not have inquired into the prosecutor's reasons for exercising the peremptory challenge. We therefore decline to consider the reasons given and uphold the prosecutor's exercise of his peremptory challenge.

Rabb also asserts that there was insufficient evidence to support the district court's conclusion that he was part of the conspiracy. The existence of a conspiracy is undisputed. The evidence is overwhelming because the other four codefendants admitted they conspired with one another. The only question was whether Rabb was a part of it. Statements of the coconspirators clearly demonstrated that he was. Rabb's argument is that the government failed to make the necessary prima facie showing indicating his membership in the conspiracy by means of evidence independent of these statements.

He first challenges the order of proof allowed by the district court, contending that the prima facie evidence must be admitted prior to the coconspirators' statements. This decision resides with the district judge, *United States v. Zemek*, 634 F.2d 1159, 1169 (9th Cir.1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341, 450 U.S. 985, 101 S.Ct. 1525, 67 L.Ed.2d 821, 452 U.S. 905, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981), and we will review the entire record in determining the existence of the required prima facie evidence.

■■■■ The government must show only substantial evidence—not evidence beyond a reasonable doubt—independent of the coconspirators' statements which demonstrates Rabb has at least a slight connection to the existing conspiracy. *Id.* at 1170; *cf. United States v. Dixon*, 562 F.2d 1138, 1141 (9th Cir.1977), *cert. denied*, 435 U.S.

927, 98 S.Ct. 1494, 55 L.Ed.2d 521 (1978). After examining the record, we conclude that the government met its burden. Rabb's statements to his coconspirators (which are not hearsay, Fed.R.Evid. 801(d)(2)(A)) giving directions during the robberies, the use of a vehicle during the robberies that was kept at Rabb's registered address and to which he had access, and the evidence of clothing used in the robberies found in Rabb's motel room were prima facie sufficient to connect Rabb to the conspiracy.

■■■■ Rabb asserts three additional errors: (1) the district court erred by refusing to give an "addict-informer" instruction for the jury to assess the testimony of one witness; (2) the district court erroneously denied a mistrial by not providing a limiting instruction after inadvertent testimony regarding an uncharged bank robbery, and because of prejudice resulting from the severance of a codefendant after opening statements; and (3) the district court erred by not giving a multiple conspiracy instruction to the jury. We review the first two issues for an abuse of discretion. *See, e.g., United States v. McCown*, 711 F.2d 1441, 1453 (9th Cir.1983) (denial of a motion for mistrial); *United States v. Ochoa-Sanchez*, 676 F.2d 1283, 1289 (9th Cir.) (addict-informer instruction), *cert. denied*, 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982). Our review of the record reveals no support for any of these contentions; there was no abuse of discretion. Similarly, our review of the record reveals no evidence to support a multiple conspiracy theory. Therefore, a review of the entire charge in the context of the whole trial reveals no error. *See United States v. Marabelles*, 724 F.2d 1374, 1383 (9th Cir.1984); *United States v. James*, 576 F.2d 223, 226–27 (9th Cir.1978).

■■■■ Rabb's final arguments involve his sentence. He asserts it was excessive, and that he should have been placed in a drug treatment-probation program. The court sentenced Rabb to concurrent confinement for less than the maximum period. *See* 18 U.S.C. § 371 (conspiracy maximum five

years); 18 U.S.C. § 2113(a) (unarmed bank robbery maximum twenty years); 18 U.S.C. § 2113(a), (d) (armed bank robbery maximum twenty-five years). The length of confinement was not an abuse of discretion. *See United States v. Chiago,* 699 F.2d 1012 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 171, 78 L.Ed.2d 154 (1983). Rabb's contention that he should have been placed in a treatment program also is without merit. Since the district court's sentence was within statutory limits, we generally are unable to review it on appeal. *See Dorszynski v. United States,* 418 U.S. 424, 431, 440–41, 94 S.Ct. 3042, 3046, 3051, 41 L.Ed.2d 855 (1974); *United States v. Mitsubishi International Corp.,* 677 F.2d 785 (9th Cir.1982).

Rabb, however, does have one meritorious claim. He asserts that he was sentenced to five years imprisonment on count two for robbery. Rabb alleges that there is a discrepancy between the sentencing hearing and the commitment order. The commitment order commits Rabb to serve fifteen years for count two. The transcript of the sentencing hearing, however, indicates that Rabb is correct; he was sentenced to only five years for count two. Tr. 1101. The government concedes this discrepancy and agrees that the sentence should be five years. We vacate the sentence in count II and, pursuant to rule 10(e), Fed.R.App.P., direct the district court to correct this clerical error and modify the commitment order as provided by rule 36, Fed.R.Crim.P. In all other respects, Rabb's conviction is affirmed.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.