UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20329
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

TUNJI ADEWAL HASSAN, also known as
Tunji A. Hassan; BABATUNDE M. ODUNTAN;
and AYODEJI OLUSOLA BABATOLA,
also known as Ayodeji O. Babatola,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Southern District of Texas
_____

May 9, 1996

Before GARWOOD, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

PER CURIAM:

The Government brings this interlocutory appeal from a district court order suppressing evidence in the criminal prosecution of Tunji Hassan, Babatunde Oduntan, and Ayodeji Babatola (collectively, "Defendants") for possession of heroin with the intent to distribute and conspiring to commit that offense. See 21 U.S.C. §§ 841(a)(1), 846.  We reverse and remand to the district court for proceedings not inconsistent with this opinion.

BACKGROUND

On April 3, 1994, United States Customs agents arrested Cheryl Washington at Houston Intercontinental Airport after discovering that she was carrying approximately five pounds of heroin. Washington identified Hakeem Lawal as the individual who recruited her to smuggle the heroin. After agents arrested Lawal on August 10, 1994, he agreed to cooperate with the investigation and implicated the Defendants in the heroin scheme. He also agreed to take agents Chuck Mazzilli, Mark Klemm, and Shawn McElroy to the Defendants' apartment.

Lawal, the agents, and several Houston police officers arrived at the apartment complex at approximately 11 p.m. Lawal called the apartment and spoke briefly with Oduntan so that the agents could ascertain whether anyone was there. The agents and Lawal then climbed the stairs to the Defendants' apartment. Agent Klemm peeked through the edge of the miniblinds, which were down, to determine whether any of the occupants were armed. He observed Hassan and Oduntan at the dining room table pouring a white substance that appeared to be heroin through a strainer. The table was covered with sheet pans filled with the substance. Agent Mazzilli then made a similar observation through the miniblinds.

At that point, Klemm yelled to the police officers waiting downstairs to come up to the apartment. Mazzilli knocked on the door; as the Defendants approached it, he yelled, "police." Agent Klemm then saw the Defendants move back toward the table. Mazzilli kicked open the door and the agents entered the apartment and

arrested the Defendants. The apartment was not searched until a warrant was obtained the next day.

The Defendants subsequently moved to suppress all evidence seized pursuant to the warrantless entry. The district court suppressed the evidence after concluding that exigent circumstances did not exist to justify the agents' warrantless entry.[1] The Government filed a motion for reconsideration, arguing for the first time that the independent source doctrine justified the admission of the evidence. The district court concluded that the doctrine was inapplicable and refused the Government's request for another hearing to develop evidence on independent source. The Government timely appealed.

DISCUSSION

The Government contends that the district court erred in concluding that the independent source doctrine was inapplicable to the instant cause. The Supreme Court has held that where evidence initially unlawfully seized is subsequently obtained pursuant to a search warrant based on independent information, the independent source doctrine applies not only to evidence seen for the first time during the warrant-authorized search, but also to evidence seen in plain view at the time of the illegal warrantless search. See Murray v. United States, 487 U.S. 533, 541-42, 108 S. Ct. 2529,

---

[1] The Government does not challenge on appeal the district court's ruling on exigent circumstances.

2535-36, 101 L. Ed.2d 472 (1988).[2]

The Government thus contends that the fact that the heroin was observed and smelled during the illegal warrantless entry does not render it inadmissible if it was also obtained pursuant to an independently-acquired search warrant. See id., 108 S. Ct. at 2535-36; United States v. Restrepo, 966 F.2d 964, 969 (5th Cir. 1992), cert. denied, 506 U.S. 1049, 113 S. Ct. 968, 122 L. Ed.2d 124 (1993) (noting that evidence discovered during a violation of the Fourth Amendment is admissible if it is also discovered through an independent source).

The Defendants initially assert that the Government waived its independent source argument by not raising it in the district court until the motion for reconsideration. See Steagald v. United States, 451 U.S. 204, 209, 101 S. Ct. 1642, 1646, 68 L. Ed.2d 38 (1981) (concluding that the government may waive error by failing to raise issues in a timely fashion during litigation); Giordenello v. United States, 357 U.S. 480, 488, 78 S. Ct. 1245, 1251, 2 L.

---

[2] The Court recognized that the rationale for the independent source doctrine involved a balancing of interests:

> [T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position that they would have been in if no police error or misconduct had occurred. . . . When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.

Murray, 487 U.S. at 537, 108 S. Ct. at 2533 (quoting Nix v. Williams, 467 U.S. 431, 443, 104 S. Ct. 2501, 2509, 81 L. Ed.2d 377 (1984)).

Ed.2d 1503 (1958) (holding that the government could not raise new theory on appeal to Supreme Court because it failed to give the lower courts an opportunity to rule on the theory); <u>United States v. Musa</u>, 45 F.3d 922, 925 (5th Cir. 1995) (noting that issues not raised will not be considered on appeal); <u>McRae v. United States</u>, 420 F.2d 1283, 1285-89 (D.C. Cir. 1969) (concluding that the government is not entitled to reconsideration by judge during trial after it has lost on a pretrial suppression motion).[3]

We decline to conclude that the Government waived the independent source argument by not raising it until the motion for reconsideration. The cases the Defendants rely on involved issues that were argued for the first time on appeal. The Government, however, presented the independent source issue at a time when the district court possessed the ability to rule on it. Clearly, the Government did not waive its argument on appeal by waiting until the motion for reconsideration to advance it.

The Government's failure to raise the issue during the first suppression hearing may be considered, however, in determining whether the district court abused its discretion in refusing to

---

[3] <u>McRae</u> is the only case the Defendants cite involving a motion to reconsider before the district court. The case, however, concerned the issue of whether the Government can move to reopen the suppression ruling during the trial when the district court has previously ruled against the Government in a pretrial hearing (at the time, the Government could not seek an interlocutory appeal of an adverse suppression ruling). <u>McRae</u>, 420 F.2d at 1285. Thus, <u>McRae</u> was in an entirely different procedural posture than the instant cause in which the Government moved for reconsideration pretrial. Moreover, we have limited <u>McRae</u> to situations in which a judge at trial reverses a pretrial suppression ruling entered by a *different* judge. See <u>United States v. Scott</u>, 524 F.2d 465, 467 (5th Cir. 1975).

reopen the hearing to allow the Government to present evidence on independent source.  See United States v. Walker, 772 F.2d 1172, 1177 (5th Cir. 1985); see also United States v. Hobbs, 31 F.3d 918, 923 (9th Cir. 1994).  The district court denied the motion because "[t]here was ample time to prepare for the previous hearing and the Court spent considerable time reviewing the facts of this case.  No new information has been presented that would justify oral argument."

We agree with the Defendants that the district court did not abuse its discretion in denying the Government's request to present additional evidence on the independent source doctrine.  This conclusion, however, does not end our inquiry because the district court did more than simply refuse to reopen the evidence; it actually ruled on the merits of the Government's argument by concluding that the independent source doctrine was inapplicable because the agents lacked sufficient facts to obtain a warrant in the absence of the illegal entry.

Because the district court considered and ruled on this issue, we must review whether it erred in determining the applicability of the independent source doctrine.  As the Third Circuit has observed:

> Generally, the denial of a motion for reconsideration is reviewed for an abuse of discretion. However, because an appeal from a denial of a motion to reconsider necessarily raises the underlying judgment for review, the standard of review varies with the nature of the underlying judgment. Where . . . the underlying judgment was based in part upon the interpretation and application of a legal precept, our review is plenary.  But to the extent that the district court's order was based on its factual conclusions, we review under a "clearly

6

erroneous" standard.

United States v. Herrold, 962 F.2d 1131, 1136 (3d Cir.), cert. denied, 506 U.S. 958, 113 S. Ct. 421, 121 L. Ed.2d 344 (1992) (citations omitted).

The district court must perform a two-part analysis to determine whether the independent source doctrine applies: (1) does the warrant affidavit, when purged of tainted information gained through the initial illegal entry, contain sufficient remaining facts to constitute probable cause ("probable cause"); and (2) did the illegal search affect or motivate the officers' decision to procure the search warrant ("effect of the illegal entry"). See Restrepo, 966 F.2d at 966. This Court has addressed the proper standard of review in assessing each prong. The probable cause prong involves a question of law that we review *de novo*.[4] Id. at 971; see United States v. Phillips, 727 F.2d 392, 394-95 (5th Cir. 1984) (concluding that a reviewing court may independently consider the sufficiency of the evidence in examining the district court's determination of probable cause). In contrast, the "effect of the illegal entry" prong involves a factual determination, Restrepo, 966 F.2d at 972, that should be reviewed under the clearly erroneous standard. See United States

---

[4] We note that the Supreme Court recently granted certiorari on the related issue of whether appellate courts should apply a *de novo* standard of review to the district court's determination of reasonable suspicion to stop and probable cause to search in cases involving warrantless searches. See United States v. Ornelas-Ledesma, 16 F.3d 714, 719 (7th Cir. 1994), cert. granted, Ornelas v. United States, _ U.S. _, 116 S. Ct. 417, 133 L. Ed.2d 334 (1995).

v. Andrews, 22 F.3d 1328, 1333 (5th Cir.), cert. denied, _ U.S. _, 115 S. Ct. 346, 130 L. Ed.2d 302 (1994) (concluding that a district court's factual findings on a motion to suppress should be reviewed only for clear error).

In the instant cause, the main dispute between the parties involves their characterizations of the district court's determination that "[b]ut for the illegal entry, the officers probably would not have had sufficient evidence to obtain the warrant." The Government asserts that this finding concerns the probable cause prong, while the Defendants argue that it pertains to the factual issue of the effect of the illegal entry.

Although the language is somewhat ambiguous, the district court's order appears to involve a "probable cause" determination rather than an "effect of the illegal entry" analysis. The district court focuses on the fact that sufficient evidence "probably" would not have existed to allow the officers to obtain a search warrant if the illegal entry had not occurred. The order's language does not concern "whether information gained through the illegal search influenced or motivated the officers' decision to procure a warrant." Restrepo, 966 F.2d at 971. Nothing in the district court's brief analysis indicates that it ever considered whether the Customs agents were motivated to seek the warrant by the sights and smells they observed upon entering the Defendants' apartment. We conclude that the district court's ruling involved the probable cause prong of the independent source doctrine. See id.

8

Under the probable cause prong, this Court reviews the district court's ruling by excising from the warrant affidavit those facts that were gleaned from the illegal search and then examining whether the affidavit's remaining information is sufficient to constitute probable cause.  See id. at 966.  If the warrant affidavit, expunged of the tainted information, still contains sufficient evidence, then the probable cause prong is satisfied.  Id. at 971.

When those facts and conclusions that would not have been available but for the illegal entry into the Defendants' apartment are excluded, the affidavit still contains the following information:  Cheryl Washington's arrest and her identification of Lawal as the individual who recruited her to smuggle heroin; incriminating phone conversations between Lawal and Washington; Lawal's arrest and offer to cooperate with Customs agents; Lawal's admission that he recruited Washington to smuggle heroin for the Defendants; Lawal's identification of the Defendants' apartment; the agents' observation through the miniblinds of the Defendants cutting heroin at the dining room table;[5] and after one agent

---

[5]    Relying on the "plain view" rule, the district court concluded that the officers had a legal right to look through the edge of the closed miniblinds into the Defendants' apartment.  See United States v. Jackson, 588 F.2d 1046, 1052-53 (5th Cir.), cert. denied, 442 U.S. 941, 99 S. Ct. 2882, 61 L. Ed.2d 310 (1979) (holding that officers did not violate the Fourth Amendment by listening to the accused's conversation through a motel wall); Gil v. Beto, 440 F.2d 666, 667 (5th Cir. 1971) (concluding that officers did not violate Fourth Amendment by looking through motel room window because the "officers [were] lawfully on the premises and merely observe[d] what was in plain view").  Because this is the Government's interlocutory appeal, the Defendants do not complain of the district court's finding.  We assume for purposes

yelled, "police," the Defendants turned back towards the table in panic.

This independently-acquired information provided sufficient evidence to establish probable cause for the issuance of a search warrant. <u>See id</u>. at 971. In addition to tips from informants, the Customs agents actually observed the Defendants cutting and sifting a large amount of heroin. We conclude as a matter of law that the expurgated affidavit sufficiently established probable cause. Therefore, the district court erred in finding the independent source doctrine inapplicable based on a lack of probable cause.

The determination of probable cause, however, does not end the analysis. The district court must also examine whether "information gained through the illegal search influenced or motivated the officers' decision to procure a warrant." <u>Id</u>.[6]

---

of this opinion that the district court correctly concluded that the agents had a legal right to look through the Defendants' miniblinds and that the heroin was in plain view.

[6]     The Defendants rely on <u>United States v. Dawkins</u>, 17 F.3d 399 (D.C. Cir. 1994), in arguing that for this second prong, "what counts is whether the actual illegal entry had any effect in producing the warrant." <u>Id</u>. at 408 (quoting <u>Murray</u>, 487 U.S. at 542 n.3, 108 S. Ct. at 2536 n.3). They assert that the Court in <u>Dawkins</u> rejected the independent source doctrine because it was not convinced that the illegal entry did not affect the production of the warrant, and that we should likewise reject the Government's argument on this issue.
Despite the factual similarity between the two cases, the Defendants' reliance on <u>Dawkins</u> is misplaced. Citing language in <u>Murray</u> that the independent source doctrine is not applicable if information obtained during the entry was presented to the Magistrate and affected his decision to issue the warrant, the <u>Dawkins</u> Court concluded that evidence obtained during a later search pursuant to a warrant had to be suppressed because "information derived from the illegal search played a large role in the magistrate's decision." <u>Id</u>.
We have rejected previously, however, the contention that

10

Although both parties argue that we should decide the issue of the "effect of the illegal entry," we believe that a remand of this factual prong to the district court is appropriate. See id. at 972 (remanding on the effect of the illegal entry issue because motivation involves a question of fact). The district court may wish to consider such factors as the precise nature of the information acquired after the illegal entry, the importance of this information compared to all the information known to the agents, and the time at which the officers first evinced an intent to seek a warrant. See id.; United States v. Register, 931 F.2d 308, 311 (5th Cir. 1991) (noting that the officer began preparing warrant affidavit before illegal entry occurred). In determining

---

Murray requires the reviewing court "to consider the *actual* effect of the illegally-acquired information in [the] warrant affidavit on the decision of this *particular* magistrate judge to issue the warrant." Restrepo, 966 F.2d at 969. In concluding that the effect on "the [magistrate's] decision to issue the warrant" was encompassed within the probable cause prong, we reaffirmed our pre-Murray holdings that "inclusion of illegally-acquired information on a warrant affidavit does not invalidate the warrant if the affidavit's other averments set forth probable cause." Id. at 970.

Citing Herrold, a Third Circuit decision reversing a district court's ruling that the inclusion of illegally obtained evidence in the affidavit affected the magistrate's decision to issue a warrant, we determined that an individualized inquiry of the effect on the magistrate is not required. Id. (citing Herrold, 962 F.2d at 1141-42, for the proposition that "the fact that an application for a warrant contains information obtained through an unlawful entry does not per force indicate that the improper information "affected" the justice's decision to issue the warrant and thereby vitiate the applicability of the independent source doctrine"). Instead, we examine whether the tainted information affected the magistrate's decision by assessing whether the affidavit, purged of all tainted information, still contains sufficient facts to establish probable cause. Id. We do not perform a separate inquiry of the effect on the magistrate, as the D.C. Circuit did in its analysis. Dawkins, 17 F.3d at 408. Thus, Dawkins is inapposite to the instant cause under the law of this circuit.

11

motivation, the district court may also examine the reasons why the officers decided to include the illegally-obtained information in the affidavit.

CONCLUSION

We reverse the district court's conclusion that the independent source doctrine is inapplicable and remand the case to the district court for a determination of whether the agents were influenced or motivated to procure a warrant by information they obtained through the illegal entry.[7]

REVERSED AND REMANDED.

---

[7] It is within the district court's discretion to decide whether it wishes to reopen the hearing on this issue or to simply examine the record from the first suppression hearing for evidence of the agents' motivation; except, the district court shall not grant relief on the Government's motion for reconsideration without affording the Defendants an opportunity to present evidence on the second prong as stated in Restrepo.