**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lloyd Eugene BUTCHER,**
**Defendant–Appellant.**

No. 89–50558.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1991.

Decided Feb. 6, 1991.

Paul L. Abrams, Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Stefan D. Stein, Asst. U.S. Atty., Los Angeles, for plaintiff-appellee.

Before ALARCON, NORRIS and WIGGINS, Circuit Judges.

ALARCON, Circuit Judge:

Lloyd Eugene Butcher (Butcher) appeals from his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Butcher claims that (1) the district erred in denying his motion to suppress evidence obtained as a result of his unlawful arrest; (2) the district court abused its discretion in permitting the government to offer evidence of illegal narcotics found in his possession and other guns found at his residence, and in failing adequately to instruct the jury on the limited purpose of the admission of the evidence; (3) the district court abused its discretion by refusing to allow him to present surrebuttal testimony; and (4) the district court erred by considering his past convictions to enhance his sentence in the absence of a proper showing that he understood the nature of the offenses to which he pleaded guilty or *nolo contendere*. We disagree and affirm.

## I. FACTUAL BACKGROUND

Butcher was arrested on May 23, 1988 by Special Agent James E. Connor, California

Department of Correction, for parole violation. Immediately prior to his arrest Butcher's residence was under surveillance by Connor, and Los Angeles Deputy Sheriffs Roger Harryman and Alan Haney. They observed Butcher leave his residence carrying a black briefcase and walk down his driveway. They subsequently observed him drive a pickup truck to the end of the driveway and park it. He then re-entered his residence without the briefcase. A short time later Butcher loaded some auto supplies in the bed of the truck and drove off. With the assistance of Sergeant Roy Broxton of the Downey Police Department, Butcher's vehicle was brought to a stop.

Deputy Sheriff Harryman testified that as he approached the passenger side of the vehicle he observed the black brief case on the passenger's seat and what appeared to be the butt of a small automatic pistol tucked between Butcher's legs. Sergeant Broxton pulled Butcher out of the truck. Sergeant Broxton testified that as Butcher turned and started sliding out of the drivers seat he heard the sound of metal striking metal and then the pavement. When he looked down he observed a small automatic pistol at his feet. Deputy Sheriff Harryman subsequently recovered the .25 caliber pistol and found it to contain four live bullets. Special Agent Connor testified that he observed the gun fall out of the truck after it struck the floorboard.

After Butcher was taken into custody, the briefcase was opened at Special Agent Connor's request. It was found to contain two plastic bags containing 39 grams of methamphetamine, a plastic scale with powdery residue on top, 50 various sized plastic bags, a greeting card with the name of Lloyd Butcher on the outer envelope, an envelope containing $1000.00 in cash and two $3 \times 5$ cards with names and figures written on it. A parole search of Butcher's apartment yielded a sawed-off shotgun and a .44 caliber pistol in one of the bedrooms.

As part of its case in chief, the Government presented the testimony of Los Angeles Deputy Sheriff Richard Ballestros, who testified as an expert witness on narcotics trafficking. He testified that methampha-

timine was normally sold in .25 gram packets and that 39 grams would provide 390 individual doses of the drug. He identified the index cards found in the briefcase as "pay and owe sheets" commonly found during the arrest of drug dealers. He opined, based upon the evidence found in the briefcase that the methamphetamine was possessed for the purpose of sale. He further testified that drug traffickers typically possess weapons to guard their drugs and money.

Vickie Butcher testified for the defense that the .25 caliber pistol found in the street belonged to her. She stated that she kept the gun at the home of her former boy friend, John Robbins. She testified further that she had obtained the gun from Robbins the day before Butcher's arrest and placed it in the driver's side map compartment of the truck. She explained that she had agreed to loan the gun to the vehicle's owner in return for borrowing the truck. She further stated that she never told Butcher that she had gone to get the gun, or that the gun was in the truck. She also said that she left the gun in the truck so that it would not be in the house.

John Robbins testified for the defense that he gave the pistol to Vickie Butcher as a gift while they cohabitated during 1987. He stated that she retrieved it from him sometime in 1988.

Butcher testified in his own defense. He stated that he had not been told that the gun was in the truck and that he had no knowledge that it was there. He denied having had the gun between his legs. He testified that the first time he saw the gun was when it was picked up the police. He further testified that he had not placed the black briefcase containing drugs in the truck and saw it for the first time after his arrest. He denied that the briefcase was his and claimed that the card with his name on it had been on the dashboard.

On cross examination, Butcher testified that one of the conditions of his parole was that he could not possess firearms. He also testified that his wife left the gun in the truck because she didn't want firearms around him. He further denied that he had

two guns in his bedroom. He stated that his wife slept in the upstairs bedroom on the day of his arrest because the downstairs bedroom that he and she normally shared had been flooded. He stated that the upstairs bedroom was normally used by another individual.

On rebuttal, the Government recalled Special Agent Connor. He testified that he participated in the search of Butcher's residence immediately following his arrest. Special Agent Connor stated that he saw no signs of a plumbing leak in the residence. He further testified that he found a .44 caliber pistol and sawed-off shotgun in Butcher's bedroom. He stated that the shotgun was lying on the floor between the bed and the window. He further testified that Vickie Butcher was sleeping in the bed at the time he entered the room. She told him that it was her bedroom. He also observed photographs of Butcher and his wife in the room and papers bearing Butcher's name.

## II. ADMISSIBILITY OF EVIDENCE OBTAINED AFTER ARREST

Butcher contends that he was unlawfully arrested and that the district court should have granted his motion to suppress the evidence. We review *de novo* an order denying a motion to suppress. *United States v. Limatoc*, 807 F.2d 792, 794 (9th Cir.1987) (citing *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir.1986)). "[T]he ultimate issue of the lawfulness of a search presents a mixed question of law and fact that is reviewed *de novo.*" *Limatoc*, 807 F.2d at 794 (citing *United States v. Feldman*, 788 F.2d 544, 550 (9th Cir.1986)).

### A. Legality of the Arrest

Butcher contends that the person who arrested him was not an agent of his parole officer and therefore could not take him into custody or conduct a search without probable cause. Butcher also argues that the arrest was invalid because it was used as a subterfuge for a criminal investigation.

■ Under California and federal law, probable cause is not required to arrest a parolee for a violation of parole. Warrantless arrests of parole violators are also valid. *People v. Kanos*, 14 Cal.App.3d 642, 648, 92 Cal.Rptr. 614 (1971); *United States v. Rabb*, 752 F.2d 1320, 1324 (9th Cir.1984), *cert. denied*, 471 U.S. 1019, 105 S.Ct. 2027, 85 L.Ed.2d 308 (1985). The arrest of a parolee is more like " 'a mere transfer of the subject from constructive custody into actual or physical custody.' " *Rabb* at 1324 (quoting *People v. Villareal*, 262 Cal. App.2d 438, 447, 68 Cal.Rptr. 610 (1968)).

■ A parole officer is not required personally to effect the arrest or search of his parolee to validate the arrest or search. *United States v. Dally*, 606 F.2d 861, 862–63 (9th Cir.1979); *People v. Kanos*, 14 Cal. App.3d at 646, 92 Cal.Rptr. 614. In *Kanos*, the court stated:

> The legality of the search is not affected by the fact that it was conducted by Special Agents ... rather than by defendant's own parole officer. The function of these agents was to investigate and apprehend parole violators; they were acting in line with department procedures on behalf of the department.

*Id.* at 649, 92 Cal.Rptr. 614.

■ In the instant case Butcher was arrested on May 23, 1988 by Special Agent James E. Connor of the California Department of Corrections. Special Agent Connor acted in accordance with his statutory duties as an agent for the Department of Corrections. Pursuant to California Penal Code § 830.2(f), the primary duties of the Department of Corrections' Special Agents are the "investigation or apprehension of parolees [and] parole violators...." On May 11, 1988, Butcher's parole officer, Stewart Yeomans, told Special Agent Connor that Butcher had violated the terms of his parole and was a fugitive from the Department of Corrections. Parole Officer Yeomans gave Butcher's last known residence address to Special Agent Connor. Special Agent Connor had the authority pursuant to section 830.2(f) to arrest Butcher once Parole Officer Yeomans told him that Butcher had violated his parole. The district court did not err in concluding

that the arrest "was a lawful arrest effected by Agent Connor and in the proper course of his official duties."

### B. Subterfuge for Criminal Investigation

■ We have previously stated that "under no circumstances should cooperation between law enforcement officers and probation officers be permitted to make the probation system 'a subterfuge for criminal investigations.'" *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 267 (9th Cir. 1975) (quoting *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir.1975)). Whether a parole officer is a "stalking horse" for the police is a question of fact subject to the clearly erroneous standard of review. *United States v. Jarrad*, 754 F.2d 1451, 1454 (9th Cir.1985). A parole officer is not considered a "stalking horse" if he initiates a search in the performance of his duties as a parole officer. *Id.* We have also recognized that "[p]arole and law enforcement officials frequently cooperate in the course of their work." *Id.* We agree with the California Court of Appeal's statement in *Kanos*, that "[p]olice assistance properly may be requested by parole agents for providing protection and for aiding in the apprehension and investigation of a parole violator." 14 Cal.App.3d at 649, 92 Cal. Rptr. 614.

■ Parole Officer Yeomans initiated the arrest of Butcher by telling Special Agent Connor on May 11, 1988 that Butcher was a fugitive and was in violation of the conditions of his parole for failure to report for narcotics testing. On May 13, 1988 Parole Officer Yeomans submitted a parolee-at-large report to the Board of Prison Terms, stating that Butcher had violated the conditions of his parole. Deputy Sheriff Harryman's activities in this case were undertaken at Special Agent Connor's request for the purposes of locating and arresting Butcher for a parole violation. Deputy Sheriff Harryman was not involved in investigating Butcher prior to Special Agent Connor's request for his assistance. The district court did not clearly err in concluding that Butcher's arrest was not used as a subterfuge for a narcotics investigation by the Los Angeles County Sheriff's Department.

### III. ADMISSIBILITY OF EVIDENCE OF NARCOTICS AND OTHER GUNS

Butcher contends that the court abused its discretion in denying his motion *in limine* to exclude evidence of the narcotics and guns found after his arrest. We review rulings on the admissibility of evidence for abuse of discretion. *United States v. Mundi*, 892 F.2d 817, 820 (9th Cir.1989).

### A. Other Crimes Evidence

During its case in chief, the Government presented evidence concerning the narcotics found in Butcher's possession in the briefcase in the truck. On rebuttal, the Government introduced testimony regarding the weapons found in his home. Butcher argues that evidence that he possessed narcotics, and the weapons found in his residence was inadmissible under Rule 404(b) of the Federal Rules of Evidence. The Government contends that the evidence was properly admitted to prove the absence of mistake or accident and that Butcher knowingly possessed the gun in the truck.

Butcher's defense to the charge of being a felon in possession of a firearm was that he was unaware of the presence of the gun in the truck. We must decide whether it is logical to infer from evidence of the possession of narcotics that a person had knowledge of a weapon found in the same vehicle. We conclude that such evidence was admissible on alternative theories.

■ First, we are persuaded that evidence of the possession of a controlled substance is relevant evidence from which it can be inferred that a defendant had knowledge of the possession of a weapon found in close proximity to the illegal drugs. In *United States v. Simon*, 767 F.2d 524 (8th Cir.1985) the Eighth Circuit was called upon to decide whether the presence of narcotics can be admitted to establish possession of a firearm. *Id.* at 526.

The court held that evidence the defendant was in the process of packaging drugs for sale at the time of his arrest was relevant to show that he was in possession of the firearms found in the room. The court stated: "[t]his evidence was particularly probative of opportunity, intent and *knowledge*." *Id.* at 527 (emphasis added). "Firearms are known 'tools of the trade' of narcotics dealing because of the dangers inherent in that line of work. The guns found in the desk were loaded.... That Simon was engaged in drug packaging tends to prove that the guns were in his possession because of the known correlation between drug dealing and weapons." *Id.* (citations omitted). We have also noted the connection between narcotics sales and the possession of firearms. In *United States v. Crespo de Llano*, 838 F.2d 1006, (9th Cir.1987) we held that evidence of the possession of firearms can be relevant to show involvement in the narcotics trade. *Id.* at 1018 (citing *United States v. Martin*, 599 F.2d 880, 889 (9th Cir.) *cert. denied*, 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1067 441 U.S. 962, 99 S.Ct. 2408, 60 L.Ed.2d 106 (1979)).

■ As in *Simon*, Butcher was in possession of a loaded handgun. He had a large quantity of drugs and cash. A rational trier of fact could infer from the presence of the scales, plastic bags, and the pay and owe sheets, that he was preparing to engage in a narcotics transaction at the time of his arrest. We agree with the Eighth Circuit's conclusion in *Simon* that evidence of narcotics trafficking may be properly admitted to show knowing possession of a weapon.

■ The court did not abuse its discretion in admitting evidence of the controlled substance in the truck and the weapons located in Butcher's residence, because the presence of the weapons in the house, and methamphetamines and paraphernalia used in the sale of this drug, was inextricably intertwined with the possession of the firearm found in the truck.

We have previously held that proof of other unlawful acts is not inadmissable under Rule 404(b) of the Federal Rules of Evidence "when 'the evidence concerning the ["other"] act and the evidence concerning the crime charged are inextricably intertwined.' " *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir.1987) (quoting *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir.1979)). " '[T]he policies underlying the rule are simply inapplicable when some offenses committed in a single criminal episode become "other acts" because the defendant is indicted for less than all of his actions.' " *Id.* Given our holding that there exists the requisite nexus between guns and narcotics, and between guns and other guns, we hold that the district court did not abuse its discretion in admitting the challenged evidence.

### B. Limiting Instruction

Butcher also asserts that the court erred "by failing to instruct the jury as to the proper consideration of this evidence in its deliberations." Appellant's Opening Brief at 36. The court's formulation of its charge to the jury is a matter of discretion " '[s]o long as the instructions fairly and adequately cover the issues presented....' " *United States v. Linn*, 880 F.2d 209 (9th Cir.1989) (citing *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir. 1985)).

In *Soliman*, we held that a jury instruction that "[the defendant] is not on trial for any act or conduct not alleged in the indictment" was a sufficient limiting instruction regarding evidence of "other crimes." *Soliman*, 813 F.2d at 279.

■ In the present case, the district court gave the jury two limiting instructions on the proper use of the evidence of uncharged misconduct. The district court cautioned the jury to "remember that this defendant is on trial here, not anyone else, and only for the crime charged, not for anything else. You should consider evidence ... about other acts of the defendant, only as they relate to these charges against the defendant." The district court further instructed the jury that "the defendant is not on trial for any act or conduct not alleged in the indictment." The district

court did not abuse its discretion in the formulation of its limiting instructions.

## IV. DENIAL OF OPPORTUNITY TO PRESENT SURREBUTTAL TESTIMONY

■ Butcher also complains that the district court abused its discretion by not allowing him to present surrebuttal testimony. Butcher informed the district court that he wished to recall Deputy Sheriff Harryman to establish that there were multiple bedrooms in his apartment, that his report of the search contained no evidence indicating that the upstairs bedroom was occupied by Butcher, and that no firearms were found in his bedroom. He also informed the court that he wanted to recall his wife to testify that the room she was found in was not their bedroom.

We review a district court's rulings on the admission or exclusion of surrebuttal evidence for abuse of discretion. *United States v. McCollum*, 732 F.2d 1419, 1426 (9th Cir.1984).

In *McCollum*, we held that the trial court acted within its discretion by excluding surrebuttal testimony where "the testimony would have been cumulative." *Id.* at 1426. *Accord, United States v. Decoito*, 764 F.2d 690, 695 (9th Cir.1985) ("The district court may control the scope of surrebuttal evidence and may refuse to allow cumulative testimony.")

The district court did not abuse its discretion in concluding that the testimony that Butcher sought to introduce was cumulative. Special Agent Connor testified that he believed that there were three bedrooms in the residence. This testimony was uncontradicted.

Butcher testified that he and his wife occupied the downstairs bedroom but that she had slept upstairs on the day of his arrest because their bedroom was flooded on the previous evening. Mrs. Butcher's testimony would not have presented any new evidence. The district court did not abuse its discretion by excluding the cumulative surrebuttal testimony.

## V. ENHANCEMENT OF SENTENCE BASED ON PRIOR CONVICTIONS

Butcher contends that the district court erred in enhancing his sentence based upon his December 3, 1974, January 24, 1977, and February 16, 1977, prior convictions. He asserts that the Government failed to establish that he understood the nature of these offenses.

■ A district court's determination that a plea was voluntary is reviewed *de novo*. *Hayes v. Kincheloe*, 784 F.2d 1434, 1436 (9th Cir.1986). We review a district court's findings of fact relating to the validity of a plea for clear error. *Id.* A conviction that is based upon a plea that is not voluntary and intelligent is invalid. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969). The record of a plea proceeding must reflect that the defendant voluntarily waived three rights: the right to a jury trial, the right to confront one's accusers, and the privilege against compulsory self-incrimination. *Id.* Where the record is silent the burden shifts to the Government to prove that the waiver was voluntarily and intelligently made. *United States v. Pricepaul*, 540 F.2d 417, 423 (9th Cir.1976) (citations omitted).

■ The records of the Los Angeles County Superior Court demonstrate that Butcher was aware of the nature of the offense when he entered his plea of *nolo contendere* on December 3, 1974 to second-degree robbery. The reporter's transcript shows that Butcher was advised of each of his constitutional rights. He was also advised of the elements and nature of the crime of robbery. The record shows that Butcher was advised "that the People would have to prove that you took certain personal property from the person of another by the (sic) means of force." Butcher responded that he understood. Butcher also informed the court that he had spoken with his attorney and that his plea was free and voluntary.

Steve Allen, Butcher's trial counsel in the 1974 state court proceedings, testified at the sentencing proceeding in this matter that his standard procedure is to advise his

clients of the nature and elements of the offenses with which the defendant is charged and the possible defenses. Mr. Allen also testified that it is his standard procedure to advise clients who enter pleas of guilty or *nolo contendere* of their constitutional rights.

Butcher plead guilty to the crime of bank robbery in United States District Court for the Central District of California on January 24, 1977. The record of that proceeding reflects that Butcher was arraigned and entered a free and voluntary guilty plea before Judge Albert Lee Stevens, Jr. The Government submitted, without objection, a declaration by the prosecutor of her conversation with Judge Stevens. The prosecutor declared that Judge Stevens informed her that it is his standard practice to advise a defendant of his constitutional rights in conducting guilty plea proceeding and to ensure that a defendant acts knowingly and voluntarily. Both the Government and Butcher's counsel submitted declarations of their conversations with Elliott Aheroni, Butcher's lawyer at the time of the federal bank robbery charge. Mr. Aheroni, stated that it is his standard procedure to advise defendants of the nature and elements of all offenses with which the defendant is charged as well as possible defenses. He further stated that he advises his clients who enter guilty pleas of their constitutional rights.

The record of the proceedings regarding the February 16, 1977, robbery conviction in the Los Angeles County Superior Court establishes that he was advised of, and knowingly and voluntarily waived, each of his *Boykin* rights at the time of his *nolo contendere* plea. Butcher contends that there was no record regarding whether he received a full explanation of the robbery offense including the element of specific intent. Arnold Lieman, Butcher's lawyer at the time of the entry of the plea, testified that his standard practice was to advise his clients of the elements of the charged offenses and potential defenses. He also testified that his practice was to inform those clients charged with first-degree robbery that one of the elements of that crime was "specific intent to deprive someone permanently of their property."

The Supreme Court has stated that notice of the true nature of a charge does not require a description of every element of the offense. *Henderson v. Morgan*, 426 U.S. 637, 647 n. 18, 96 S.Ct. 2253, 2258 n. 18, 49 L.Ed.2d 108 (1976). We have held in this regard that:

> The record need not necessarily show that every element of the crime was explained in detail to defendant, but it will normally show an explanation of the charge by the judge or a representation by counsel that he explained it, and it 'may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.'

*Sober v. Crist*, 644 F.2d 807, 809 (9th Cir. 1981) (quoting *Henderson*, 426 U.S. at 647, 96 S.Ct. at 2258). The records of each of Butcher's prior convictions support the presumption that he was advised of the nature of these offenses. Accordingly the district court did not err in considering Butcher's prior convictions as a proper basis for enhancing his sentence.

## VI. CONCLUSION

The district court did not err in its evidentiary rulings, instructions to the jury, or in relying upon the prior convictions to enhance Butcher's sentence.

AFFIRMED.