REINHARDT, Circuit Judge:
Appellant Jaeobo Graibe appeals his conviction, entered upon a plea of guilty, and sentence for distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1). Graibe contends that his conviction is invalid because the district court failed to comply with Rule 11(e)(2) of the Federal Rules of Criminal Procedure by not informing him that he could not withdraw his guilty plea in the event that the court refused to accept the government’s sentencing recommendation.[1] We agree and reverse his conviction.
I.
On February 20, 1990, Jaeobo Graibe and two co-defendants were charged in a three count indictment with conspiring to distribute more than five kilograms of cocaine (count one), attempting to distribute nine kilograms of cocaine (count two), and distributing 14,990 grams of cocaine (count three), in violation of 21 U.S.C. §§ 841(a)(1) and 846. Pursuant to a written plea agreement between Graibe and the government, Graibe agreed to plead guilty to count three of the indictment. In return, the government agreed to move for dismissal of counts one and two at the time of sen-fencing and to recommend the applicable statutory minimum mandatory term of imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). The prosecution also stated that it would recommend that only the amount of cocaine charged in count three be considered in determining defendant’s base offense level and promised not to seek any upward adjustment to defendant’s base offense level. The parties calculated that Graibe would be placed in criminal history category II, because of his 1989 conviction for money laundering and his commission of the instant offense while on probation, and would have an offense level of 30 under the Federal Sentencing Guidelines. Given a criminal history category of II and offense level of 30, the plea agreement set forth a Guidelines sentencing range of 108 to 135 months, which would permit for the recommended 120 month sentence.
At the plea hearing, the district court advised Graibe in regard to his rights relating to, and the effects of, his guilty plea. The court specifically stated that the recommendations in the plea agreement would not bind it in determining the appropriate sentence to impose. The court also advised the defendant that the government’s recommendation would have to be made through the Probation Office because the court did not accept recommendations directly from the prosecution. However, the district court made no mention of the fact that under Rule 11(e)(2) of the Federal Rules of Criminal Procedure Graibe would not have the right to withdraw his plea of guilty if the court decided at the time of sentencing to reject the government’s sentencing recommendation.
On May 31, 1990, the Probation Office released the presentence report for examination and comment by the parties. The *1431 report stated that Graibe had a criminal history category of III rather than II because his criminal history included an additional point for a 1980 state misdemeanor trespassing conviction, which apparently had not previously been disclosed to the prosecution. The report also recommended a two point enhancement of appellant’s offense level for his leadership role in the offense. In accordance with its determination that Graibe had a total offense level of 32 and criminal history category of III, the report set forth a Guidelines sentencing range of 151 to 188 months.
In response to the presentence report, Graibe filed a memorandum setting forth his position with respect to the sentencing factors. He contended, inter alia, that his 1980 misdemeanor trespass conviction, entered upon a plea of nolo contendere, was constitutionally invalid because the municipal court failed to advise him of several constitutional rights. Therefore, he argued, the 1980 conviction should not be counted under the Sentencing Guidelines. With respect to the presentence report’s recommendation that the district court enhance his offense level by two points for his leadership role in the offense, Graibe asserted that the district court should reject the presentence report’s recommendation in light of the parties’ plea agreement. Graibe attached as an exhibit to his memorandum a stipulation entered into by his counsel and the government’s counsel. The stipulation provided that the district court could properly exclude defendant’s 1980 trespassing conviction from his criminal history category and could reject the presentence report’s recommendation that two points be added to his offense level for his leadership role.
On July 16, 1990, Graibe appeared in the district court for sentencing. The court rejected Graibe’s arguments relating to his 1980 trespassing conviction and leadership role in the offense. Notwithstanding the plea agreement and the government’s subsequent stipulation regarding the sentencing factors, both of which contained a recommendation for a sentence of 120 months, the district court sentenced Graibe to 180 months in prison.
II.
Graibe claims that his conviction is invalid as a matter of law under Fed. R.Crim.P. 11(e)(2). Accordingly, we review the district court’s judgment de novo. United States v. Jaramillo-Suarez, 857 F.2d 1368, 1369 (9th Cir.1988) (citing United States v. Whitney, 785 F.2d 824, 825 (9th Cir.), as amended, 838 F.2d 404 (1986)).
With respect to plea agreements that are not binding upon the court, Rule 11(e)(2) provides that “the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea.” -Fed.R.Crim.P. 11(e)(2). The government concedes that the district court erred by failing to comply with this requirement. It contends, however, that the district court’s noncompliance constitutes harmless error under Rule 11(h). We disagree.
Rule 11(h) provides that “[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.” However, as the Advisory Committee notes to Rule 11(h) provide, “subdivision (h) makes no change in the responsibilities of the judge at Rule 11 proceedings but instead merely rejects the extreme sanction of automatic reversal.” Fed.R.Crim.P. 11(h), Notes of Advisory Committee to the 1983 Amendment. Indeed, Rule 11(h) does not alter a district judge’s duty to “engage in careful and thorough compliance with the rule’s requirements, and violations which may be classified as ‘harmless error,’ on direct appeal are limited.” United States v. Jaramillo-Suarez, 857 F.2d 1368, 1371 (9th Cir.1988) (citation omitted). Thus, the principal question we must address in this case is whether a district court’s failure to advise a defendant that he cannot withdraw his guilty plea even if the court does not follow the recommendation in the plea agreement “affects substantial rights.” Our first step in answering that question must be to examine the purpose and effect of Rule 11(e)(2).
*1432 III.
In order to satisfy the due process requirements of the Fifth Amendment, a defendant’s guilty plea must be voluntary and intelligent. Carter v. McCarthy, 806 F.2d 1373, 1375 (9th Cir.1986) (citation omitted). As the Supreme Court has observed, the acceptance of a guilty plea requires the “utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.” Boykin v. Alabama, 395 U.S. 238, 243-44, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). As one commentator noted, “[i]f the defendant does not understand the scope of the prosecuto-rial promises, he cannot properly evaluate the risks inherent in the agreement.” D. Kaplan, Where Promises End: Prosecuto-rial Adherence to Sentence Recommendation Commitments in Plea Bargains, 52 U.Chi.L.Rev. 751, 769 (1985). An accused’s plea of guilty can be voluntary only if he is “fully aware of the direct consequences” of his plea. Brady v. United States, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970); see also McCarthy v. United States, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). It is this informed voluntariness that Rule 11(e)(2) is designed to ensure.
A defendant’s choice between entering into a plea agreement with the government or proceeding to trial rests upon his calculation of the relative risks and benefits of each option. The degree of risk in accepting a plea agreement that specifies a sentence recommendation is directly related to the degree of discretion afforded a trial court in imposing a sentence greater than that settled upon by the parties. A defendant will undoubtedly have more concerns about accepting a plea agreement if the trial court has the discretion to bind him irrevocably to a higher sentence. Cf. Brady v. United States, 397 U.S. 742, 756, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970) (“Often the decision to plead guilty is heavily influenced by the defendant’s appraisal of the prosecution’s case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted.”)
Graibe entered into the type of agreement specified in Fed.R.Crim.P. 11(e)(1)(B), a “type (B)” agreement, which permits the prosecution to make a sentencing recommendation, or not to challenge the defendant’s request for a particular sentence, with the understanding that such a recommendation is not binding on the district court. A fundamental consequence of a type (B) plea agreement is that the defendant cannot withdraw his guilty plea. The district court may reject the recommended sentence and nonetheless bind the defendant to a higher sentence. Unlike other plea agreements made pursuant to Rule 11, type (B) agreements, once accepted by the court, foreclose forever the defendant’s other options. When a defendant agrees to plead guilty under a type (B) plea agreement, the parameters of his fate have been set; no change of heart or dashing of expectations at the time of sentencing can undo his guilty plea.
The remaining types of plea agreements specified in Rule 11(e)(1), types (A) and (C), do not embody the element of risk found in type (B) agreements, as they provide for a particular disposition that the judge cannot reject without permitting the defendant to withdraw his plea. Rule 11(e)(1)(A) provides for dismissal of the charges; Rule 11(e)(1)(C) provides that the government attorney may agree that a specific sentence is appropriate. In a type (A) or (C) case, if the court does not accept the proposed dismissal of charges or the sentence the parties settled upon, the defendant has the option to withdraw his plea and go to trial or, possibly, to enter a plea upon different terms.
The Advisory Committee specifically noted the importance of the district judge’s advising a defendant who enters a type (B) plea that if his plea is accepted it cannot be withdrawn even if the court fails to follow the recommendation. The Committee stated that:
Because a type (B) agreement is distinguishable from the others in that it involves only a recommendation or request *1433 not binding upon the court, it is important that the defendant be aware that this is the nature of the agreement into which he has entered. The procedure contemplated ... will establish for the record that there is such awareness.
Fed.R.Crim.P. 11, Note of Advisory Committee to the 1979 Amendment. Because type (B) agreements embody such a high degree of risk, the advisement required by Rule 11(e)(2) is of critical importance. A defendant who is unaware of the substantial uncertainty inherent in entering a plea pursuant to a type (B) agreement does not enter his plea intelligently and knowingly.
IV.
While acknowledging that the district court erred in failing to advise the defendant that he would be unable to withdraw his plea if the court decided to impose a sentence in excess of the one agreed upon, the government urges us to characterize that error as harmless. The harmless error clause of Rule 11 requires courts to uphold guilty pleas when there has been only a minor or technical violation of Rule ll.[2] The Advisory Committee to the 1983 amendment of Rule 11(h) cautioned that “subdivision (h) should not be read as supporting extreme or speculative harmless error claims or as, in effect, nullifying important Rule 11 safeguards.” Fed. R.Crim.P. 11(h), Notes of Advisory Committee to the 1983 Amendment (emphasis in original). Indeed, the Advisory Committee emphasized the limited scope of the harmless error rule under Rule 11, stating that “it is fair to say that the kinds of Rule 11 violation which might be found to constitute harmless error upon direct appeal are fairly limited.”
“Subdivision (h) ... may not be applied to nullify or dilute important Rule 11 safeguards.” Jaramillo-Suarez, 857 F.2d at 1371. As we have already made clear, the right of a defendant to be informed that if he pleads in connection with a type (B) agreement he will surrender his right to withdraw that plea constitutes a “substantial right”. The warning required by Rule 11(e)(2) provides an “important safeguard” designed to ensure that the plea is “intelligent” and “knowing”, and the omission of such a warning is neither “minor” nor “technical”.
Notwithstanding the above, a failure to comply strictly with Rule 11(e)(2) might be harmless if the record showed that the defendant actually knew that he would be bound by his plea regardless of the length of the sentence the district judge decided to impose. We have held, for example, that a failure to comply strictly with the provision of Rule 11 relating to the maximum length of the sentence that can be imposed is harmless where the record shows that the defendant knew before pleading guilty that he could be sentenced to a term as long as the one he actually received. United States v. Sanclemente-Bejarano, 861 F.2d 206, 210 (9th Cir.1988) (per curiam).[3] The same principle *1434 applies with respect to other important ad-visements. What is critical in Rule 11 harmless error cases is what the defendant knew at the time of the plea — and, in determining what the defendant knew, we are limited to what the record of the plea proceeding contains. Where the court has failed to provide the defendant with the required information regarding an important right, the record must demonstrate that the defendant was aware of the necessary information at the time he entered his plea. Rule 11 is designed to ensure that the defendant is aware of his fundamental rights before he pleads guilty, not that he will become aware of those rights some time after the plea. See Jaramillo-Suarez, 857 F.2d at 1372-73 (“ ‘[T]he dictates of Rule 11 and the federal policy of fair and efficient judicial administration require that the reviewing court look solely to the record of the plea proceeding.’ ” (citation omitted)); United States v. Earner, 781 F.2d 1380, 1383 (9th Cir.) (“ ‘[Cjlaims of noncompliance with rule 11 must be resolved solely on the basis of the rule 11 transcript. That transcript provides all that is needed and all that is allowed for the resolution of such claims.’ ” (quoting United States v. Coronado, 554 F.2d 166, 170 n. 5 (5th Cir.1977))), cert. denied, 479 U.S. 819, 107 S.Ct. 80, 93 L.Ed.2d 35 (1986). Here, we must determine whether the record shows that Graibe knew at the time he pleaded that he would be unable to withdraw his plea if the judge decided to impose a sentence higher than that contained in the plea agreement.
Nothing in the record of the plea proceeding suggests that Graibe knew that he would not have the right to withdraw his guilty plea if the judge refused to impose the sentence agreed upon by the parties. This is not a case in which the district judge merely failed to utter verbatim some magical words. The required advisement was not given in any form. Although the district judge informed the defendant that the court had no obligation to accept the government’s sentencing recommendation, and told him further that it was the Probation Office’s recommendation rather than the prosecution’s that would guide the court, he clearly did not advise the defendant that he would have no right to withdraw his plea in the event that the court chose to impose a higher sentence. We agree with the Tenth Circuit that “[tjhe proposition that the court is not bound by the Government’s recommendations is distinct from the proposition that the defendant is bound if the court chooses not to follow the recommendation. Informing the defendant of the former does not relieve the court of its responsibility to inform him of the latter.” United States v. Theron, 849 F.2d 477, 481 (10th Cir.1988) (citations omitted).
The government seeks to have us utilize a different form of harmless error analysis. It urges us to require a showing that there is “some realistic possibility” that the defendant in fact misapprehended the rule in question. In- support of its proposition, the government cites two cases from other circuits, United States v. Thibodeaux, 811 F.2d 847, 848 (5th Cir.), cert. denied, 483 U.S. 1008, 107 S.Ct. 3236, 97 L.Ed.2d 741 (1987), and United States v. de la Puente, 755 F.2d 313, 315 (3d Cir.), cert. denied, 474 U.S. 1005, 106 S.Ct. 524, 88 L.Ed.2d 456 (1985). In de la Puente, the Third Circuit held that “the omission of the statement required by Rule 11(e)(2) must be deemed harmless error unless there is some realistic likelihood that de la Puente labored under the misapprehension that his plea could be withdrawn.” de la Puente, 755 F.2d at 315. The Fifth Circuit followed de la Puente in Thibodeaux. We suggest, respectfully, that such an approach misconstrues the harmless error principle of Rule 11(h). The government’s proposal would effectively require the defendant to meet the burden of proving a negative — to show that he in fact did not understand the omitted Rule 11 advisement.
We have no doubt that the Rule 11 harmless error clause imposes no such *1435 burden on the defendant. We have previously made clear in Jaramillo-Suarez, 857 F.2d at 1372, that this circuit follows the converse of the rule suggested by the government. Jaramillo-Suarez requires an affirmative showing on the record that the defendant was actually aware of the advisement, not a showing by the defendant that he was unaware of the omitted advisement. Accordingly, we reject the government’s suggestion. We adopt instead the Tenth Circuit’s view that the failure to advise is not harmless whenever “there is a reasonable possibility that [defendant] was confused in a way that compliance with Rule 11 could have remedied.” United States v. Theron, 849 F.2d 477, 481 (10th Cir.1988).
The purpose of the Rule 11(e)(2) warning is to provide essential information to the defendant so that he will fully understand the implications of his plea. If a defendant is not given that warning, there will necessarily be a “reasonable possibility” that he will not comprehend those implications fully — unless the record of the plea proceeding contains facts warranting a contrary conclusion. Informing a defendant that the judge is not bound by the government’s recommendation and has the discretion to impose a higher sentence, or even that the judge is only interested in what the Probation Office recommends, is simply not enough. There is still a critical information gap.
There is no evidence in the record which suggests that Graibe actually knew at the time of his plea that he would not be free to withdraw it if the district court decided to impose a term greater than the recommended sentence. The government contends, however, that even if that is so, it should prevail because Graibe’s conduct after the plea proceeding did not suggest that he did not know that he could not withdraw the plea. As we stated above, we look solely to the record of the plea proceeding to determine what Graibe did or did not know, and the error cannot be harmless unless the record affirmatively shows that Graibe possessed the requisite knowledge. The present record is wholly insufficient to make that showing.

CONCLUSION

The district court’s decision to impose a sentence of 180 instead of 120 months on Graibe, made without informing him that he would not have the right to withdraw his guilty plea, affected a substantial right. The error was not harmless. Accordingly, Graibe is entitled to plead anew. Jaramillo-Suarez, 857 F.2d 1368. We reverse the judgment of the district court and remand with directions to vacate the judgment of conviction, the sentence and the plea of guilty upon which the conviction is based, and to afford Graibe the opportunity to enter a new plea.
REVERSED and REMANDED.

. Graibe also asserts that his sentence should be reduced because the district court erroneously enhanced his criminal history category under the Sentencing Guidelines on the basis of a constitutionally invalid prior conviction. This claim lacks merit. The district court properly determined that Graibe’s 1980 trespassing conviction was validly based on an intelligent and voluntary plea. "The record of a plea proceeding must reflect that the defendant voluntarily waived three rights: the right to a jury trial, the right to confront one's accusers, and the privilege against compulsory self-incrimination.” United States v. Butcher, 926 F.2d 811, 817 (9th Cir.1991) (citing Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711-12, 23 L.Ed.2d 274 (1969)). The state court record for Graibe's 1980 conviction demonstrates that he was, at a minimum, advised of these three rights. Therefore, the district court properly concluded that appellant's 1980 conviction was constitutionally valid.

. As illustrations of harmless error, the Advisory Committee to the 1983 amendment offered the following three examples: first, “where the judge’s compliance with subdivision (c)(1) was not absolutely complete, in that some essential element of the crime was not mentioned, but the defendant’s responses clearly indicate his awareness of that element”; second, "where the judge’s compliance with subdivision (c)(2) was erroneous in part in that the judge understated the maximum penalty somewhat, but the penalty actually imposed did not exceed that indicated in the warnings”; and, third, "where the judge completely failed to comply with subdivision (c)(5), which of course has no bearing on the validity of the plea itself _” Fed. R.Crim.P. 11(h), Notes of Advisory Committee to the 1983 Amendment.

. For example, in United States v. Kearney, 750 F.2d 787 (9th Cir.1984), we held that the sentencing magistrate’s failure to inform the defendant directly that he would be sentenced as a second offender constituted harmless error. Id. at 791. The record in Kearney showed that during the examination of the defendant the magistrate did not say to the defendant, "You will be sentenced as a second offender." However, at the plea proceeding, the magistrate, while not addressing his remarks to Kearney directly, stated unequivocally in Kearney’s presence that he would do just that. The magistrate stated on the record, "I can tell you right now that I'll view [Kearney] as a second offender.” Id. at 790. The defense counsel shortly thereafter received a brief recess to confer with her client. After the recess, Kearney entered a plea of guilty. We held that the record made it clear *1434 that "Kearney was aware at the time he pleaded guilty that he could be subject to penalties as a second offender_ Because Kearney had actual knowledge of the sentencing consequences of his guilty plea, his rights cannot be said to have been substantially affected." Id. at 791.