990 F.2d 1265
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
James TAYLOR, Defendant-Appellant.
 No. 92-10304.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 7, 1993.*
Decided April 14, 1993.
 
 Before BROWNING, KOZINSKI and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 James Taylor appeals his conviction following jury trial for possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Taylor contends the district court erred by denying his motion to suppress evidence of drugs and a gun found following warrantless searches of a car he was driving and an apartment he was seen entering. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 
 
 3
 We review de novo the district court's denial of a motion to suppress, but for clear error the district court's underlying findings of fact. United States v. $25,000 U.S. Currency, 853 F.2d 1501, 1504 (9th Cir.1988).
 
 1. Background
 
 4
 In November 1990, Taylor was on parole from California state prison. One of the special conditions of Taylor's parole was that "any property under [his] control may be searched without a warrant." Taylor signed a form acknowledging this condition when he was released.
 
 
 5
 On November 16, 1990, Sacramento area Special Agent Chuck Pearce of the Special Services Unit (SSU) of the California Department of Corrections (CDC) received information from a San Rafael, California SSU agent and from an informant that Taylor was a parolee-at-large. Agent Pearce was informed that an arrest warrant carrying $100,000 bail had been issued for Taylor based on a drug offense in Oakland, California, and that Taylor was residing at and dealing drugs from a specifically named apartment address in Sacramento. In addition, Agent Pearce was informed by the San Rafael SSU agent that he should consider Taylor to be armed and dangerous because a parole search of Taylor's previous residence resulted in the discovery of ammunition. Agent Pearce assumed that the San Rafael SSU had agent received most of his information from the same confidential informant with whom Agent Pearce later spoke.
 
 
 6
 On the same date, Agent Pearce surveilled the Sacramento apartment identified by the confidential informant. Shortly after he arrived, he witnessed Taylor drive up in a grey Nissan. Taylor got out of the car, entered the apartment using a key, came back out soon thereafter, and drove away in the Nissan. Agent Pearce called other SSU agents for backup and then conducted a successful search for Taylor's vehicle in the immediate vicinity. After finding the Nissan and getting its license plate number, Pearce lost sight of the Nissan in heavy traffic and returned to the apartment to continue surveillance. Pearce learned from the confidential informant that the Nissan belonged to Taylor's girlfriend. This information was confirmed by Department of Motor Vehicles records before Taylor was arrested.
 
 
 7
 Later, Taylor drove the Nissan back to the apartment house and parked around the back, but was not seen entering the apartment again. Taylor then drove away from the apartment house. Agent Pearce and other agents stopped the Nissan within one half-mile of the apartment. The Nissan was occupied by Taylor, who was driving, and another parolee, who was in the passenger seat. Agent Pearce identified himself, and then he and the other agents searched the Nissan. In the passenger compartment, agents found a marijuana cigarette and a cellular telephone. Taylor himself carried an electronic pager. Agent Pearce then searched the Nissan's trunk, finding a gun box for a Glock 9mm pistol, Model 17, with a serial number printed on the box and nine rounds of 9mm ammunition in the gun box. In response to a question, Taylor told one of the other officers that no one was home at the apartment.
 
 
 8
 Agent Pearce and some of the other agents then took Taylor's key ring and returned to the apartment. After knocking on the door and receiving no response, the agents entered using one of the keys on Taylor's key ring to open the door. Inside, in a room agents believed to be Taylor's, the agents discovered a Glock 9mm pistol, the serial number of which matched the serial number on the box found in the Nissan, and an extra ammunition clip. The agents also discovered a significant amount of rock cocaine and currency in that same bedroom.
 
 2. Reasonableness of the Searches
 
 9
 "Parole searches may be conducted without a warrant under a reasonableness standard." Toomey v. Bunnell, 898 F.2d 741, 744 (9th Cir.), cert. denied, 498 U.S. 960 (1990). We evaluate under the totality of the circumstances whether police had reasonable suspicion that "the item to be searched belongs to, or is under control of, the parolee." United States v. Davis, 932 F.2d 752, 758, 760 (9th Cir.1991) (holding that test for validity of California state probation search is same as test for validity of parole search). Even after the arrest of a parole violator, California's "continuing interest in [the parolee's] progress" permits a parole search which might aid the state court in determining whether to continue, modify, or revoke parole. United States v. Dally, 606 F.2d 861, 863 (9th Cir.1979).
 
 
 10
 "A parole search is proper if conducted in a manner consistent with state law." United States v. Garcia-Cruz, 978 F.2d 537, 541 (9th Cir.1992). A California parole officer need not obtain a warrant to search a parolee's residence so long as the parole officer has reasonable cause to believe evidence of parole violations will be found therein. Latta v. Fitzharris, 521 F.2d 246, 249-52 (9th Cir.), cert. denied, 423 U.S. 897 (1975). "A [California] parole officer is not required personally to effect the arrest or search of his parolee to validate the arrest or search." United States v. Butcher, 926 F.2d 811, 814 (9th Cir.), cert. denied, 111 S.Ct. 2273 (1991). Special agents of the CDC are authorized to investigate and apprehend parole violators. Id.
 
 
 11
 Taylor argues that because he was not the owner of the grey Nissan, Agent Pearce had no right to search the trunk of the vehicle. This argument ignores the special condition of Taylor's parole which provided that "any property under [his] control may be searched without a warrant." The undisputed facts are that Taylor was seen driving the grey Nissan on several separate occasions during the course of the day and was in fact the driver when the special agents stopped the vehicle and arrested Taylor. Under these circumstances, we hold that the special agents had reasonable suspicion that the automobile was under Taylor's control and were justified in searching the entire vehicle. See Davis, 932 F.2d at 760; Dally, 606 F.2d at 863.
 
 
 12
 Taylor next argues that parole officers had no reasonable belief that the apartment which they searched was actually his residence and therefore the apartment could not be searched without a warrant. We disagree.
 
 
 13
 Agent Pearce had been informed by a confidential informant that Taylor was living at that address. Within a short period of time after initiating surveillance of the apartment, Taylor was seen entering that apartment using his own key. He was also seen returning to the apartment house later that same day. This tended to support the reliability of the confidential informant's information. Additionally, the informant's reliability was enhanced by his correct identification of the ownership of the Nissan which Taylor was driving. Although the better practice might have been for the special agents to obtain a warrant, we hold that there is sufficient evidence in the record to establish that the agents reasonably believed that the apartment in Sacramento was Taylor's residence. See Davis, 932 F.2d at 760; Dally, 606 F.2d at 863. Accordingly, the agents were authorized to enter the apartment and search for evidence of parole violations. See Dally, 606 F.2d at 863.
 
 3. Purpose of the Searches
 
 14
 Taylor also contends Agent Pearce was acting as a "stalking horse" for law enforcement officers, using his parole authority to evade the warrant requirements of the fourth amendment. This contention is without merit.
 
 
 15
 We review for clear error the district court's factual determination that a parole officer was not acting as a "stalking horse" for the police. Butcher, 926 F.2d at 815. "A parole officer is not considered a 'stalking horse' if he initiates a search in the performance of his duties as a parole officer." Id.
 
 
 16
 It is undisputed that Taylor was a parolee-at-large suspected both of dealing drugs out of the Sacramento apartment and also of possessing firearms. Agent Pearce received some confirmation of Taylor's drug dealing activities when he arrested him and found a marijuana cigarette, cellular phone and electronic pager in the Nissan. The search of the trunk of the car and discovery of the gun box yielded support for the suspicion that Taylor was in possession of a firearm. This information justified the search of Taylor's residence. There is no evidence that Agent Pearce was engaged in anything other than a legitimate investigation of actual and potential parole violations by Taylor. See id.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3