# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10915

United States Court of Appeals
Fifth Circuit

**FILED**

March 29, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CHRISTINE NICHOLE ESTRADA,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:15-CR-45-1

Before WIENER, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Pursuant to a conditional guilty plea, Christine Nichole Estrada pleaded guilty to one count of possession with intent to distribute 500 grams or more of methamphetamine and aiding and abetting. She was sentenced to a statutory minimum sentence of 120 months of imprisonment and five years of supervised release. In her plea agreement, Estrada reserved the right to appeal the district court's decision denying her motion to suppress in part. She argues on appeal that all evidence seized from a stash house should be deemed

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10915

inadmissible as fruits of an illegal mobile tracking device investigators attached to her vehicle. For the following reasons, we AFFIRM.

I.

In the Spring of 2013, Tommy Lindley, a narcotics investigator for the Texas Department of Public Safety, received information from a cooperating individual that "Christine and Joel" were selling methamphetamine. Lindley, however, did not pursue an investigation at that particular time. He ultimately gathered further information regarding sales by Estrada and learned that she lived on North LaSalle Street and possessed two vehicles, one of which, a black Cadillac Escalade, was her primary vehicle.

Ultimately, Lindley submitted an affidavit in support of an application for the issuance of a mobile tracking device for that vehicle. TEX. CRIM. PROC. CODE art. 18.21 § 14(c)(5). Finding that the facts set forth in the affidavit established reasonable suspicion, a state court judge granted Lindley's application for the mobile tracking device. Lindley later testified that, if the judge had denied the application, he would have continued his investigation into Estrada via "physical surveillance as a team."

On November 8, 2013, Lindley placed the mobile tracking device on Estrada's Escalade and gathered information regarding a pattern of travel to North Lake Street addresses in Amarillo. On November 18, 2013, Lindley began conducting physical surveillance of Estrada without the use of the mobile tracking device. On that day, Lindley observed Estrada leave her residence on North LaSalle and travel to a residence located at 2407 North Lake Street. Lindley noticed that Estrada left the Escalade running while she visited the residence for approximately ten to fifteen minutes. After Estrada left the residence on North Lake Street, Lindley followed her to a restaurant

2

parking lot where she interacted with a man through her driver's side window in what Lindley believed was a drug transaction.

After further physical surveillance of Estrada without the aid of the mobile tracking device, Lindley followed Estrada to a store parking lot. Estrada was met in the parking lot by Jerry Thorn. After Estrada left the parking lot, Lindley approached Thorn, who was standing in the parking lot with his driver's door open. Lindley confronted Thorn about purchasing drugs, at which point Thorn retrieved a plastic bag containing approximately a quarter-ounce of methamphetamine from his console and confirmed that he had just purchased the methamphetamine from Estrada.

While Lindley questioned Thorn, other members of the surveillance team followed Estrada to a service station. When Lindley arrived at the service station, he confronted Estrada about selling methamphetamine to Thorn. Estrada denied selling Thorn methamphetamine, but did admit to having marijuana in her purse. Upon discovery of the marijuana, Lindley placed Estrada under arrest and transported her to the district police station. At the station, Lindley advised Estrada of her *Miranda* rights and conducted an interview, during which Estrada confessed to selling methamphetamine to Thorn that evening and two days prior, on November 18. Estrada advised Lindley that the methamphetamine was part of a larger amount left over when her husband went to prison. Lindley also recovered a phone that Estrada denied owning. Lindley conducted a warrantless search of the phone and discovered "numerous text messages with dope talk, setting up meet locations and negotiations for purchases of methamphetamine." Following the interview, Estrada was booked into jail on the marijuana charge.

Thereafter, Lindley and another officer decided to "conduct a knock-and-talk" at the North Lake residence. The resident there, Patricia Khweis

No. 15-10915

(Estrada's grandmother-in-law), allowed the officers to enter the residence.  In response to an inquiry about a closed door, Khweis responded that she had some personal property in the room.  When the investigators later passed the same door, Khweis again stated that the room contained some personal property and "a little bit of money."  When the officer opened the door, investigators observed stacks of money, gun safes, and a plate wrapped in aluminum foil believed to contain methamphetamine.  Ultimately, Lindley obtained a search warrant that did not reference any information gleaned from use of the mobile tracking device.  A search of the gun safes revealed 600 grams of methamphetamine, tablets of LSD, numerous weapons, and approximately $1,500 and an inculpatory notebook.  Estrada moved to suppress this evidence, which the district court, adopting the report and recommendations of the magistrate judge, denied in part and granted in part.

## II.

"When the district court denies a motion to suppress, we review factual findings for clear error and conclusions of law *de novo*."  *United States v. Rodriguez*, 702 F.3d 206, 208 (5th Cir. 2012) (quoting *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003)).  We view the facts in the light most favorable to the prevailing party, which, here, is the Government.  *United States v. Howard,* 106 F.3d 70, 73 (5th Cir. 1997).

## III.

On appeal, the Government does not contend that the installation of the tracking device, based solely upon reasonable suspicion, was permissible.  *See United States v. Jones*, 565 U.S. 400, 404 (2012) (addressing whether such devices constitute a "search").  However, even assuming that this conduct was impermissible, not all violations of the Fourth Amendment lead to a suppression of evidence.  *See United States v. Hernandez*, 670 F.3d 616, 620

4

(5th Cir. 2012).  Evidence that would otherwise be suppressible is purged of the primary taint if it derives from an independent source, if the link to the illegally secured evidence is attenuated, or if it would inevitably have been discovered without the aid of the illegally obtained evidence.  *United States v. Runyan*, 275 F.3d 449, 466 (5th Cir. 2001).

The district court accepted the Government's argument that, despite the Fourth Amendment violation, the evidence seized from the stash house was admissible under the independent source doctrine.  Under that doctrine, "even if police engage in unconstitutional activities . . . evidence discovered during such illegal activities is nonetheless admissible if it is also discovered through an independent source."  *United States v. Restrepo*, 966 F.2d 964, 969 (5th Cir. 1992).  To determine whether the independent source doctrine applies,

> [t]he district court must perform a two-part analysis . . . : (1) does the warrant affidavit, when purged of tainted information gained through the initial illegal entry, contain sufficient remaining facts to constitute probable cause ("probable cause"); and (2) did the illegal search affect or motivate the officers' decision to procure the search warrant ("effect of the illegal entry").

*United States v. Hassan*, 83 F.3d 693, 697 (5th Cir. 1996).  On appeal, we review the first prong de novo and the second prong for clear error.  *Id.*

The district court determined there was an independent source for the evidence discovered at the North Lake residence, given the evidence obtained through the physical surveillance (unaided by the tracking reports) coupled

with Estrada's own admissions.[1]  We agree that, as a matter of law, the first prong of the independent source doctrine is satisfied.[2]

Estrada maintains that the magistrate judge failed to address the second prong of the independent source doctrine.  *See United States v. Grosenheider*, 200 F.3d 321, 328 (5th Cir. 2000) (noting that the district court must "find that the agents would have sought the warrant even if [the illegal conduct] had never taken place."); *Restrepo*, 966 F.2d at 971 ("[T]he trial court [must] determine . . . whether information gained through the illegal search influenced or motivated the officers' decision to procure a warrant." (footnote omitted)).  But Estrada failed to object to the report and recommendation on this basis, so we review for plain error.  *See Starns v. Andrews*, 524 F.3d 612, 617 (5th Cir. 2008) ("[I]f a party did not object to a Magistrate Judge's Report and Recommendation, that party may not attack the proposed factual findings or legal conclusions except upon the grounds of plain error.").  Plain error review involves four parts, including that there was an error that was "clear or obvious."  *United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc).

As relevant to prong two of the independent source doctrine, the magistrate judge stated:

> Although never directly asked whether he initiated the "knock and talk" at [the North Lake residence] based upon the tracking device information or based upon the surveillance conducted November 18 and 20,

---

[1] Estrada makes much of the magistrate judge's use of the phrase "sufficiently independent."  But when considering the entirety of the magistrate judge's report and recommendations, the use of the phrase "sufficiently independent" simply reiterates the point previously made: that the surveillance was unaided by the tracking device reports.

[2] For the first time on appeal, Estrada argues that there was no independent source because the officers used the illegal tracking reports to gain Khweis's consent to search her residence during the knock-and-talk.  We review such a challenge for plain error, and we find none.  *See Starns v. Andrews*, 524 F.3d 612, 617 (5th Cir. 2008).

No. 15-10915

> 2013, there is sufficient evidence before the Court to conclude there was an independent and distinct source of information that led Agent Lindley to go to [the North Lake residence] for the "knock and talk."

By this statement, the court appears to have inferred from the evidence that the illegal tracking reports did not motivate Lindley to engage in the knock-and-talk and obtain the subsequent search warrant. Indeed, the magistrate judge credited Lindley's testimony that, without the tracking device, Lindley would have put together a team to conduct visual surveillance of Estrada. *See Restrepo*, 966 F.2d at 971 (determining that the second prong "inquiry is answered in the negative if the district court finds that 'the agents would have sought a warrant if they had not earlier entered' the Regency residence"); *see also United States v. Mays*, 466 F.3d 335, 342 (5th Cir. 2006) (noting that we defer to factual findings regarding credibility assessments).

That Lindley would have taken this approach indicates that his surveillance and subsequent knock-and-talk were not motivated by the tracking reports. Such a finding has additional support in the record. Thus, there was no clear or obvious error. However, even assuming the court erred in failing to make explicit findings regarding the second prong of the independent source doctrine, given the evidence supporting the finding, Estrada has not established any harm to her substantial rights, as required under plain error review. *Escalante-Reyes*, 689 F.3d at 419.[3]

AFFIRMED.

---

[3] To the extent that Estrada seeks to challenge the validity of Khweis's consent on appeal, that argument is deemed waived. *See United States v. Scroggins*, 599 F.3d 433, 448 (5th Cir. 2010). Although Estrada mentions the district court's ruling regarding her cell phone, she does not challenge the ruling on appeal. Accordingly, this issue is deemed abandoned. *See id.* at 446–47.