

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00124-CR
No. 07-25-00125-CR

ZUL MOHAMED, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 462nd District Court
Denton County, Texas[1]
Trial Court No. F21-1205-462, F21-1206-462, Honorable Lee Ann Breading, Presiding

May 26, 2026

## MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Zul Mohamed, appeals from the convictions rendered against him in two cases. In the first, he was convicted on eighty-one counts of fraudulent use of an application for ballot by mail.[2] In the second, he was convicted on twenty-five counts of

---

[1] This case was transferred from the Second Court of Appeals in Fort Worth pursuant to a docket equalization order from the Supreme Court of Texas. *See* TEX. GOV'T CODE § 73.001. We apply that court's precedent to the extent it conflicts with our own. TEX. R. APP. P. 41.3.

[2] TEX. ELEC. CODE § 84.0041(a), (d)(3). This offense is a third-degree felony.

knowingly possessing another voter's official ballot or official carrier envelope.[3]  Before trial, Appellant moved to suppress evidence obtained through a GPS tracking order and a subsequent search warrant.  The trial court denied the motion.  Appellant then pleaded guilty, and a jury assessed punishment.  On the ballot-application counts, the jury assessed ten years of confinement, probated for ten years.  On the ballot-possession counts, the jury assessed four years of confinement.

Appellant raises six issues.  By the first five, he challenges the suppression ruling.  The sixth challenges a condition of probation that restricts election-related activity.  We modify the judgment to strike two provisions of the probation conditions, and we affirm the judgment as modified.

## BACKGROUND

At the suppression hearing Captain Edward Barrett of the Denton County Sheriff's Office testified that he applied for and obtained both the GPS tracking order and the search warrant.  The investigation began when the local election office reported suspicious mail-in ballot requests.  More than eighty applications listed the same address, a private mailbox at a pack-and-ship store.  That mailbox was registered to "Aly Karmi," a fictitious person.  The application to open the box used false identification, false insurance information, and a false notary acknowledgment.

Barrett devised a plan to place a GPS tracker inside a box containing ballots and, through the device together with continuous visual surveillance, to identify the person who

---

[3] TEX. ELEC. CODE § 86.006(f), (g), (g-1).  This offense is a second-degree felony.

2

retrieved the package. Officers sent twenty-five ballots to the mailbox under the names listed on the fraudulent applications, with the tracker placed in the same box. Three days later the registered owner of the box was notified that a package awaited pickup. A man later identified as Appellant arrived, claimed ownership of the box, took the package, and placed it in his car. Officers followed the vehicle to a residence at 1616 Bennington Drive in Dallas County. Another officer observed the vehicle pull through the alley and into the attached garage. Throughout the surveillance the team maintained visual contact with the vehicle.

While Barrett drafted the probable-cause affidavit, a woman in a tan vehicle arrived at the residence. She approached the front door, returned to her vehicle with an item, placed the item in her trunk, and drove away. Officers followed and stopped her. They determined that she had not removed any evidence from the house. The GPS tracker remained inside the residence the entire time. Investigators knew of this event before they submitted the warrant application, yet Barrett's affidavit did not mention it.

Appellant also points to several discrepancies between the descriptions of the residence that appear in the affidavit, the warrant, and the testimony at the hearing. The affidavit referred to the address as 1616 Bennington Drive in both Denton and Dallas Counties. The warrant placed the address solely in Dallas County. The affidavit and testimony described the dwelling as a single-story home; the warrant described it both as a single-story house and as an apartment residence. The affidavit described the brick as brown; the warrant described it as red; and Barrett testified that the brick appeared pink or reddish brown depending on the viewer. The affidavit stated that the property was controlled by "Zulirza Mohamed." The warrant identified the controlling party only as a

suspect resident. Evidence at the hearing established that Appellant's parents own the home.

Barrett explained that the brick could reasonably be described as red, reddish brown, or brown. The home sits approximately 150 yards inside Dallas County, just across the line from Denton County, where Barrett primarily worked. That circumstance accounted for the affidavit's reference to Denton County. Barrett conceded that the warrant's description of the property as an apartment residence was an error. He confirmed that he drafted the affidavit while parked about a block from the home and that he later executed the warrant at the same residence he had kept under surveillance. Sherbanoo Mohamed testified that she and her husband own the home and that no one named Zulirza Mohamed has ever owned or controlled it.

**ANALYSIS**

A. Constitutionality of Article 18B and Probable Cause for the Search

By his first and second issues Appellant challenges the legal foundation for the GPS tracking order and the search warrant that followed. He contends that probable cause did not support either order because Barrett's affidavits rested on speculation that the person who collected the ballots was the fraudster and would transport them to a location containing further evidence. He further contends that the statutory scheme authorizing the GPS order, Article 18B of the Code of Criminal Procedure, violates the Fourth Amendment by supplanting the probable-cause standard with a lower threshold, by failing to require a judicial finding of probable cause, and by authorizing anticipatory tracking for mere evidence. We overrule both issues.

4

We review the trial court's ruling on a motion to suppress under a bifurcated standard. We afford almost total deference to the trial court's determination of historical facts supported by the record, and we review de novo the application of law to those facts, including questions of constitutional law. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

We need not reach the constitutionality of Article 18B. The record establishes that Barrett did not rely on the GPS tracker alone to develop probable cause for the search of the residence. Barrett testified that the vehicle was under constant visual surveillance from the moment Appellant collected the package at the pack-and-ship store until it arrived at 1616 Bennington Drive. Asked whether officers had eyes on the same vehicle the entire time, independent of the GPS tracker, Barrett answered yes. While he drafted the probable-cause affidavit from about a block away, he received real-time radio updates from the multi-agency surveillance team that kept continuous visual contact with the vehicle.

Under the independent source doctrine, evidence derived from a source separate from any allegedly unlawful conduct is not subject to suppression. *Wehrenberg v. State*, 416 S.W.3d 458, 465–70 (Tex. Crim. App. 2013); *see also Johnson v. State*, 871 S.W.2d 744, 750–51 (Tex. Crim. App. 1994). Even if the GPS tracking order rested on an unconstitutional statute, the warrant remained valid on the strength of the independent visual surveillance that placed the vehicle at the residence. The validity of the search therefore does not depend on the constitutionality of Article 18B.

This conclusion finds support in *United States v. Estrada*, 683 F. App'x 308 (5th Cir. 2017) (per curiam). In *Estrada*, the Fifth Circuit assumed that the installation of a mobile tracking device under the former version of Texas's mobile tracking statute violated the Fourth Amendment because it was authorized only upon reasonable suspicion. *Id.* at 310. Nevertheless, the court held that evidence seized from the defendant's stash house remained admissible under the independent source doctrine. Officers had conducted extensive physical surveillance unaided by the tracking device, and the lead investigator testified that he would have continued the investigation through physical surveillance if the tracking order had been denied. *Id.* at 311–12. The court emphasized that the search warrant affidavit did not reference any information gleaned from the tracking device and that the officers' decision to conduct a knock-and-talk was motivated by the physical surveillance and the defendant's own admissions. *Id.*

*Estrada* reveals important parallels to the present case. Captain Barrett testified that he would have continued surveillance through other means if the GPS order had not been granted, and the record establishes that officers maintained constant visual surveillance of the vehicle independent of the GPS tracker. As in *Estrada*, the search warrant affidavit here did not rely on any information derived from the GPS device. *See id.* Accordingly, we hold that the independent source doctrine applies and that the constitutionality of Article 18B does not affect the validity of the search warrant. *See Wehrenberg*, 416 S.W.3d at 465–70.

Appellant's probable-cause challenge fares no better on its own terms. The application for the GPS tracking order established that more than eighty mail-in ballot applications had been directed to the same private mailbox, many duplicating applications

6

already on file. Officers had confirmed with several of the listed voters that they had not submitted the requests. The mailbox was registered to a fictitious person under a false identification. On these facts the magistrate could reasonably conclude that whoever collected the package, whether or not aware of its contents, would lead investigators to the person who had fraudulently requested the ballots. *See State v. Jordan*, 342 S.W.3d 565, 569 (Tex. Crim. App. 2011) (directing courts to uphold the magistrate's probable cause determination if it had a substantial basis to conclude that probable cause existed to issue the warrant); *Parker v. State*, 206 S.W.3d 593, 597 (Tex. Crim. App. 2006) ("Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found."); *see also State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012) (describing the probable cause standard as "flexible" and "nondemanding").

To the extent Appellant argues that the ballots constitute derivative contraband rather than contraband per se, and that this distinction defeats probable cause, the contention is waived for inadequate briefing. He cites no authority that the characterization of the ballots affects the probable-cause analysis, nor does he explain why an unwitting courier could not still lead investigators to evidence of the offense. *See* TEX. R. APP. P. 38.1(i); *Bohannan v. State*, 546 S.W.3d 166, 180 (Tex. Crim. App. 2017) (declining to address appellant's due process argument as inadequately briefed, holding, "We will not make novel legal arguments for him.").

A separate ground likewise defeats Appellant's challenge to the GPS order. A person has no privacy interest in mail or packages addressed to another. *Galindo v.*

*State*, No. 02-03-00039-CR, 2004 Tex. App. LEXIS 8834, at *4 (Tex. App.—Fort Worth Sept. 30, 2004, pet. ref'd).  Without a privacy interest, a defendant has no standing to contest the search of the item.  *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004).  The package was not addressed to Appellant.  His position thus depends on two propositions that cannot stand together: that the package was not addressed to him, and that he nonetheless retained a privacy interest sufficient to challenge the GPS tracker placed inside it.

We overrule Appellant's first and second issues.

B. Alleged Material Omissions Supporting Probable Cause Affidavit

In his third issue, Appellant contends that Barrett made material omissions in the search warrant affidavit by failing to disclose that an unidentified woman briefly approached the residence while Barrett was drafting the affidavit, picked up an item, placed it in her trunk, and left.  Appellant argues that this omission "breached the integrity of [Barrett's] operation in a way that diminished the probable cause conclusion."  We disagree.

In *Franks v. Delaware*, the Supreme Court held that a warrant is invalid if the affiant makes an affirmative misrepresentation that is material to probable cause.  438 U.S. 154, 155–56 (1978).  The Texas Court of Criminal Appeals has assumed without deciding that *Franks* applies to material omissions as well.  *Diaz v. State*, 632 S.W.3d 889, 892 (Tex. Crim. App. 2021); *see also Vardeman v. State*, No. 02-19-00387-CR, 2021 Tex. App. LEXIS 8368, at *21 (Tex. App.—Fort Worth Oct. 14, 2021, no pet.) (mem. op., not designated for publication).  To prevail on a *Franks* claim based on an alleged omission,

8

the defendant must establish by a preponderance of the evidence that the omission was made knowingly, intentionally, or with reckless disregard for the truth in an attempt to mislead the magistrate, and that the omitted information was material to the probable cause determination. *Martin v. State*, No. 02-08-00128-CR, 2009 Tex. App. LEXIS 6141, at *9–10 (Tex. App.—Fort Worth Aug. 6, 2009, no pet.) (mem. op., not designated for publication); *Vardeman*, 2021 Tex. App. LEXIS 8368, at *21.

The record refutes Appellant's claim. Barrett testified that the woman never entered the residence. After officers stopped and identified her, investigators concluded she was not involved in the ballot scheme. Barrett testified that, based on the identification and questioning, the officers did not believe she had any of the evidence they were looking for. The surveillance team's continuous visual contact with the residence confirmed that nothing changed during the woman's brief visit, and real-time GPS monitoring corroborated that conclusion.

Even if Barrett had included these facts in the affidavit, they would not have defeated probable cause. The possibility that the woman might have removed evidence does not undermine probable cause where the surveillance team kept continuous eyes on the residence, confirmed she never entered, and determined through investigation that she was not involved. Appellant has not shown that the omitted information was material or that Barrett withheld it to mislead the magistrate.

We overrule Appellant's third issue.

9

C. Sufficiency of the Search Warrant's Description

In his fourth issue, Appellant challenges the search warrant's description of the home, urging that the warrant inaccurately described the brick and, in one place, described the property as an apartment residence.

The Fourth Amendment requires that a warrant describe with sufficient particularity the place to be searched. *Bonds v. State*, 403 S.W.3d 867, 874–75 (Tex. Crim. App. 2013).

> The constitutional objectives of requiring a "particular" description of the place to be searched include: (1) ensuring that the officer searches the right place; (2) confirming that probable cause is, in fact, established for the place described in the warrant; (3) limiting the officer's discretion and narrowing the scope of his search; (4) minimizing the danger of mistakenly searching the person or property of an innocent bystander or property owner; and (5) informing the owner of the officer's authority to search that specific location.

*Id.* at 875.

The Constitution does not require a perfect description, though a facially insufficient one may invalidate the warrant. *Id.* The Court of Criminal Appeals has recognized that an officer's familiarity with the property can ameliorate inaccuracies in the description. *Id.* at 876–77 & n.30.

The variation in the description of the brick, which appeared in the affidavit as brown, in the warrant as red, and in the testimony as pink, does not invalidate the warrant. The descriptions were within reason; Barrett testified that the brick could be described as red, reddish brown, or brown depending on the viewer. Beyond color, the warrant correctly identified the address, the style of home, the side of the street on which it sits,

10

the appearance of the mailbox, and the direction the home faces. Those descriptors enabled the officers to locate the property and distinguish it from others in the community. *See Id.*

That leaves only the single reference to the property as an apartment residence, set against the warrant's other descriptions of it as a single-story house. The stray reference is best read as describing the surrounding area rather than the home itself, and it follows the warrant's identification of the property as a single-story house. The affidavit is not challenged for its statements that the suspect vehicle was followed to 1616 Bennington Drive, and that the vehicle containing the box of ballots entered an attached garage there. This, as well as Barrett's other unchallenged statements, resolve any ambiguity created by the descriptive errors and render the warrant sufficiently particular.

We overrule Appellant's fourth issue.

D. Challenge to Requirement for a Neutral and Detached Magistrate

By his fifth issue, Appellant urges that the trial court should have suppressed the search results because the judge who signed the warrant failed to act as a neutral and detached magistrate. *See United States v. Leon*, 468 U.S. 897, 914–15 (1984). According to Appellant, the variations between the affidavit and the warrant are so severe that they demonstrate the magistrate merely rubber-stamped the warrant.

Appellant cites no authority for the standard of review on this question, and none for the proposition that descriptive variations between an affidavit and a warrant suffice to show that a magistrate has abdicated her role. The case Appellant cites, *United States v. Decker*, involved circumstances of a different order. There, Eighth Circuit affirmed the

11

decision of the trial court, which found a warrant glaringly omitted the items to be seized and lacked a prosecutor's signature required by Missouri law, as well as the magistrate's testimony that he did not read the warrant but relied on what the officer told him. 956 F.2d 773, 777 (8th Cir. 1992).

The affidavit and warrant here suffer from no comparable defects. The warrant lists the items to be seized, and the only variations are minor descriptive differences in the property to be searched. *Decker* is inapposite, and nothing else in the record suggests that the magistrate failed to act as a neutral and detached magistrate.

We overrule Appellant's fifth issue.

E. Conditions of Probation

By his sixth issue, Appellant urges that the probation condition prohibiting him from engaging in election-related activities violates the First Amendment. Among the conditions of probation, the trial court ordered that Appellant:

> shall not engage or participate in any election-related activities, to include but not limited to: registering voters, accessing or requesting voter data, assisting any voter to complete a ballot or ballot application, poll watching or poll greeting, working or volunteering for any political campaign, and campaigning or electioneering of any kind.

Appellant objects to the condition as a blanket prohibition on political speech. He proposes instead that he be required to report activities such as registering a post office box or making a campaign declaration or donation, so that his conduct could be monitored. The trial court overruled the objection.

12

Article 42A.051 of the Code of Criminal Procedure authorizes the trial court to grant community supervision and impose conditions. TEX. CODE CRIM. PROC. art. 42A.051(a)(2), (3). The trial court's discretion is broad but not unfettered. *Butler v. State*, 189 S.W.3d 299, 303 (Tex. Crim. App. 2006). A condition must bear a reasonable relationship to the treatment of the accused and the protection of the public. *Simpson v. State*, 772 S.W.2d 276, 280–81 (Tex. App.—Amarillo 1989, no pet.). A condition is invalid if it has no relationship to the offense, addresses conduct that is not in itself criminal, and forbids conduct unrelated to future criminality or the statutory ends of community supervision. *Id.* That a condition affects a constitutional right does not by itself render it invalid. *Cochran v. State*, 563 S.W.3d 374, 379 (Tex. App.—Texarkana 2018, no pet.). When a condition is invalid, the proper remedy is reformation by deletion of the offending language. *Belt v. State*, 127 S.W.3d 277, 281 (Tex. App.—Fort Worth 2004, no pet.).

A prior restraint is an administrative or judicial order forbidding certain communications before they occur. *Tex. Mut. Ins. Co. v. Sur. Bank, N.A.*, 156 S.W.3d 125, 128 (Tex. App.—Fort Worth 2005, no pet.) (quoting *Alexander v. United States,* 509 U.S. 544, 550 (1993)). Courts have nonetheless upheld probation terms that limit speech or association in ways tied to the offense. *See, e.g.*, *United States v. Halverson*, 897 F.3d 645, 657–58 (5th Cir. 2018) (banning social-media use for an offender convicted of possessing child pornography); *Tyra v. State*, 644 S.W.2d 865, 868 (Tex. App.—Amarillo 1982, no pet.) (prohibiting association with persons of disreputable character); *United States v. Tonry*, 605 F.2d 144, 150–52 (5th Cir. 1979) (prohibiting a probationer convicted of election-law violations from running for office or engaging in political activity).

13

In *Tonry*, the Fifth Circuit considered a probation term barring a defendant convicted of federal election-law violations from running for political office or engaging in political activity during probation. 605 F.2d at 146, 150–52. The court recognized that political activity is protected expression but sustained the condition as tied to the purposes of the election statutes and of probation: rehabilitation of the probationer and protection of the public. *Id.* at 150–51. The court explained that such a condition "assures that the defendant, while free to return to community life and earn his livelihood, will not be tempted to engage in illicit electoral activity during his probation, thus serving the purpose of protection." *Id.* at 151.

The same reasoning applies here. Appellant was convicted of statutes addressing fraudulent solicitation of mail-in ballots and unlawful possession of other voters' ballots. The enumerated activities in the trial court's condition, registering voters, accessing or requesting voter data, assisting any voter to complete a ballot or ballot application, poll watching or poll greeting, and working or volunteering for any political campaign, each bear a direct and reasonable relationship to the conduct of conviction. They place Appellant outside positions in which he could repeat or facilitate the offense, while leaving him free to vote, to speak about elections in his personal capacity, and to engage in the broader civic life of the community. *See Simpson*, 772 S.W.2d at 280–81. The enumerated restrictions therefore stand.

Some parts of the condition, however, are not so tailored. The phrase "to include but not limited to" leaves Appellant subject to enforcement for an unspecified universe of conduct that may have no connection to ballot fraud, and "campaigning or electioneering of any kind" reaches campaigns for non-political offices and other matters far afield from

14

the conduct of conviction. Each operates as a vague or overbroad restraint on protected speech. *See id.* The same is true of the umbrella phrase "any election-related activities," which standing alone provides no notice of what conduct is forbidden. With the open-ended language stricken and the enumerated list left in place, the condition gives Appellant clear notice of the prohibited conduct and remains tied to the purposes of probation.

Appellant's proposed alternative would seek to limit the restriction to receiving mail at addresses other than his home. He cites no authority, and we are aware of none, requiring that a probation condition be confined to the precise method of the offense. The conditions Appellant prefers would not foreclose unlawful access to voter or campaign information; they would only redirect where such material is delivered. We therefore reject Appellant's proposed substitute.

We sustain Appellant's sixth issue in part and overrule it in part. We modify condition (ff) of the order of community supervision to delete the phrases "any election-related activities," "to include but not limited to," and "campaigning or electioneering of any kind." As modified, the condition reads: Appellant "shall not engage in registering voters, accessing or requesting voter data, assisting any voter to complete a ballot or ballot application, poll watching or poll greeting, or working or volunteering for any political campaign."

## CONCLUSION

We modify condition (ff) of Appellant's order of community supervision to delete the phrases "any election-related activities," "to include but not limited to," and

15

"campaigning or electioneering of any kind."  The remaining enumerated restrictions stand.

As modified, the trial court's judgment is affirmed.


Lawrence M. Doss
Justice

Do not publish.

16